Robb, P.J.
*1267 {¶ 1} The Defendants-Appellants ("Kirk heirs") are the heirs of the original holders of a one-half severed mineral interest and the attorney/firm representing them (David K. Schaffner and Schaffner Law Offices, L.P.A.). They appeal the decision of the Belmont County Common Pleas Court granting summary judgment in favor of the Plaintiff-Appellee Jefferis Real Estate Oil & Gas Holdings, LLC et al. and declaring the plaintiff owns 100% of the minerals underlying its property as a result of abandonment under the 2006 Dormant Mineral Act. The court found the claim to preserve filed after service of the notice of abandonment was not valid because there was no record notice the Kirk heirs were successors or assignees of the mineral interest. However, we have previously held such a holding misconstrues the statutory provisions regarding who can file a claim to preserve and the definition of a holder.
{¶ 2} Where the original record holder's mineral interest was still owned at death, a person to whom the mineral interest passed through will or intestacy is entitled to file a claim to preserve and thwart abandonment of the mineral interest, in a case where the probate filings show the person filing a claim to preserve inherited a share of the record holder's entire estate. The fact the mineral interest was not listed in the inventory of the estate or transferred via a probate courts' certificate of title is not dispositive of the question of whether an heir to a deceased record holder can file a claim to preserve and prevent the mineral interest from being deemed abandoned under the DMA. The trial court's judgment is reversed, and the case is remanded for further proceedings.
STATEMENT OF THE CASE
{¶ 3} In 1936, John W. Kirk and Helen S. Kirk reserved one-half of their minerals when they sold the subject property (less than 20 acres) in Belmont County. Helen died testate in 1965, leaving her estate to her five children. Her estate was administered in Belmont County. John W. Kirk died testate in 1987; his will left the residue of his estate to his children through a trust. He was a resident of Texas, and an ancillary administration of his estate was filed in Belmont County. The next-of-kin listed in his estate were his surviving spouse Wilma Kirk and the five children: Jane Hinch, Barbara Turner, Diane Palmer, Marilyn Wright, and John D. Kirk. Some of these children have died, and their heirs are parties. The parties agree the subject mineral interest was not specifically devised in any pertinent will, and none of the estates listed the mineral interest in an inventory or issued a certificate of transfer regarding the mineral interest.
{¶ 4} On March 16, 2013 and March 22, 2013, the plaintiff published notice of abandonment in the newspaper. See R.C. 5301.56(E)(1) (service by certified mail to *1268 each holder, successor, or assignee; if service cannot be completed to any holder, then publication). The plaintiff filed an affidavit of abandonment in the Belmont County Recorder's office on May 10, 2013. See R.C. 5301.56(E)(2) (at least 30 but not more than 60 days after notice of abandonment).
{¶ 5} On May 14, 2013, a claim to preserve the mineral interest was filed in the recorder's office. See R.C. 5301.56(H)(1)(a) or (b) (within 60 days after notice was served or published, holder or holder's successors or assignees can file claim to preserve or affidavit identifying savings event). The affidavit for this claim to preserve was signed by Attorney Schaffner as counsel for the children of Jane Hinch: Peter Watt, Richard Watt, Michael Watt, and Jenny Robinson. This claim to preserve named other successor holders to the mineral interest as: Wilma Kirk, John D. Kirk, Jane Hinch, Barbara Turner, Diane Palmer, Marilyn Wright, Edward Turner, Margaret R. Kirk, Karl E. Palmer, Lenane Smith, and other unidentified heirs at law of John and Helen Kirk.
{¶ 6} On May 15, 2013, claims to preserve were filed in the recorder's office by the other children of John W. Kirk or their heirs, with affidavits signed by: Marilyn Wright (a child of the record holders who inherited from both parents); a child of Diane Palmer (Karl E. Palmer); the surviving spouse of John D. Kirk (Margaret R. Kirk); and the children of Barbara Turner (Lenane Smith and Edward Turner).
{¶ 7} On September 4, 2013, the plaintiff filed a complaint against the Kirk heirs who filed claims. The attorney and the law firm involved in filing the claims were also named as defendants, but we refer to the Kirk heirs for simplicity. The complaint sought quiet title of the severed mineral interest and a declaratory judgment finding the mineral interest abandoned under either the 1989 or the 2006 Dormant Mineral Act and extinguished under the Marketable Title Act. The complaint also alleged the claims were fraudulent and sought damages for slander of title. The Kirk heirs filed an answer and a counterclaim seeking a declaration they owned the mineral interest which was not abandoned.
{¶ 8} Initially, the trial court granted judgment on the pleadings in favor of the plaintiffs and declared they owned 100% of the minerals underlying their property. The decision was based on abandonment under the 1989 Dormant Mineral Act. On appeal, we granted a stay pending an Ohio Supreme Court decision on the 1989 DMA. We thereafter reversed the judgment of abandonment under the 1989 DMA due to the Supreme Court's ruling that the former version of the DMA was not self-executing and can no longer be used in lawsuits filed after the enactment of the 2006 DMA. Jefferis Real Estate Oil & Gas Holdings, LLC v. Schaffner Law Offices, L.P.A. , 7th Dist., 2017-Ohio-1013, 86 N.E.3d 966, ¶ 17, citing Corban v. Chesapeake Exploration, L.L.C. , 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089 ; Walker v. Shondrick-Nau , 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427. We remanded for further proceedings on the unaddressed claims, which included abandonment under the 2006 Dormant Mineral Act and extinguishment under the Marketable Title Act. Id. at ¶¶ 2, 32.
{¶ 9} On remand, the plaintiff filed a motion for summary judgment arguing the mineral interest was abandoned under the 2006 DMA and extinguished under the MTA. The Kirk heirs filed an opposition memorandum and a cross-motion for summary judgment. The plaintiff withdrew the motion for summary judgment on the MTA claim.
{¶ 10} On October 8, 2017, the trial court granted summary judgment in favor *1269 of the plaintiff, declaring the plaintiff owns 100% of the oil and gas underlying the subject property due to abandonment. In addition to finding the lack of a title transaction in the recorder's office or other savings event, the court found the post-notice-of-abandonment claims to preserve filed under the 2006 DMA were invalid. The court concluded they were not filed by a holder or a holder's successor or assignee as there must be "notice of record" to be a holder or successor thereto. For instance, the court opined "the passing of assets by the laws of intestacy without evidence of such assets being listed in the inventory of the estate" or "filed in the office of the Recorder, did not provide notice of a conveyance or assignment" of the mineral interest to the Kirk heirs.[1] In determining the claims to preserve were invalid, the court stated: "There is no assignment or instrument of succession record to give notice that [the Kirk heirs] are in the chain of title as the successors or assigns of the severed oil and gas interest" and "no record notice in Belmont County that any of the claimants are successors or assigns to the oil and gas interest." The Kirk heirs filed a timely notice of appeal.
ASSIGNMENTS OF ERROR ONE & TWO: ABANDONMENT
{¶ 11} The first two assignments of error set forth by the Kirk heirs provide:
"The trial court erred when it held the oil and gas interest was abandoned and Appellees own One Hundred Percent of the oil and gas."
"The trial court erred when it held that an heir at law that is not listed in an estate administration is prohibited from inheriting mineral property rights."
{¶ 12} Under the 2006 DMA, "[a]ny mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:" (1) the interest is in coal; (2) the interest is held by the government; or (3) one of six listed savings events has occurred within the 20 years immediately preceding the date on which notice is served or published under division (E). R.C. 5301.56(B). The first savings event is: "The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located." R.C. 5301.56(B)(3)(a). Another example of a savings event is when "[a] claim to preserve has been filed in accordance with division (C) of this section." R.C. 5301.56(B)(3)(e).
{¶ 13} To have a mineral interest deemed abandoned and vested in the surface owner, the surface owner must: "Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned." R.C. 5301.56(B), (E)(1). "If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located." Id. The surface owner can then file an affidavit of abandonment in the recorder's office at least 30 but not later than 60 days after the notice of abandonment *1270 is served or published. R.C. 5301.56(E)(2). If the holder of the mineral interest does not timely respond to the notice of abandonment, then the surface owner can file a "notice of failure to file" in the recorder's office, at which point the mineral interest "shall vest in the owner of the surface of the lands." R.C. 5301.56(H)(2). See also former (H)(2) (which, prior to January 30, 2014, provided the surface owner shall cause the county recorder to memorialize the record with a statement of abandonment).
{¶ 14} If "a holder or a holder's successors or assignees" claim the mineral interest has not been abandoned, then "the holder or the holder's successors or assignees" can file, no later than 60 days after service or publication of the notice of abandonment: (a) a claim to preserve the mineral interest in accordance with division (C); or (b) an affidavit identifying a savings event within the twenty years immediately preceding the date on which the notice was served or published. R.C. 5301.56(H)(1)(a)-(b) (and "[t]he holder or the holder's successors or assignees shall notify the person who served or published the notice under division (E) of this section of the filing under this division").
{¶ 15} This means the mineral interest can be preserved from abandonment by filing a timely claim to preserve after the notice of abandonment. Dodd v. Croskey , 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147 at ¶ 30. A timely claim to preserve filed by one mineral holder after the surface owner published notice of abandonment protects all of the mineral holders. Id. at ¶ 28, citing R.C. 5301.56(C)(2) (a claim that complies with (C)(1) preserves the rights of all holders of a mineral interest in the same lands).
{¶ 16} Initially, the Kirk heirs complain the plaintiff published the notice of abandonment instead of first attempting service by certified mail. However, arguments about the efforts at service of the notice of abandonment can become moot after a claim to preserve is timely filed. Warner v. Palmer , 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, 2017 WL 1102786, ¶ 21, citing Dodd v. Croskey , 7th Dist. No. 12 HA 6, 2013-Ohio-4257, 2013 WL 5437365, ¶ 59.
{¶ 17} It is not disputed that timely claims to preserve were filed by the Kirk heirs in this case, i.e., claims to preserve were filed within 60 days of the publication. See R.C. 5301.56(H)(1)(a). (One of these claims to preserve was filed by the child of the two record holders. The local probate estate filings of one record holder showed her children inherited all her property by will; and the local probate estate filings of the other record holder showed his children inherited the residue of his estate by will through a trust.)
{¶ 18} The dispositive issue on abandonment is whether the claims to preserve were invalid because the Kirk heirs were not record holders or were not specifically "on record" as being successors to the original record holders such as by an estate inventory listing the minerals or a certificate of transfer issued by the probate court. The Kirk heirs assert they were entitled to preserve the mineral interest under the 2006 DMA as they were the heirs of the original record mineral holders and no recorded transfer of the mineral interest occurred prior to the deaths of those original holders.
{¶ 19} The plaintiff claims the trial court properly held "record notice" is necessary to evidence a transfer in order for the claimant to have the ability to file a valid claim to preserve. In support, the plaintiff isolates a sentence in Corban : "the legislature did not intend title to dormant minerals to pass automatically and outside the *1271 record chain of title." Corban , 149 Ohio St.3d 512, 2016 -Ohio- 5796, 76 N.E.3d 1089 at ¶ 27. However, this was an observation made while holding the 1989 DMA was not self-executing. And, it was a statement about why title to dormant minerals would not pass to a surface owner through abandonment. It had no relation to mineral interests being preserved by the heir of a deceased record mineral holder.
{¶ 20} The plaintiff also quotes: "Allowing a claim preserving a mineral interest to be filed after the surface owner's notice furthers the legislative purpose because a claim to preserve describes an identifiable mineral-interest holder who presents a chain of title from which that holder claims interest in the mineral rights ." (Emphasis added). Dodd , 143 Ohio St.3d 293, 2015 -Ohio- 2362, 37 N.E.3d 147 at ¶ 36 (where the issue addressed was whether the statute provides for a post-notice-of-abandonment claim to preserve to save the minerals from abandonment). The plaintiff presumes the Court meant a "record chain of title" containing the actual transfer to the claimant and notes the DMA provides a claim to preserve shall consist of a notice stating "the nature of the mineral interest claimed and any recording information upon which the claim is based." R.C. 5301.56(C)(1)(a). The plaintiff essentially interprets this statutory section to mean there must exist recording information specifying the claimant owns the minerals and not merely general probate filings showing the claimant inherited all property.
{¶ 21} On this point, division (C)(1)(a) refers to "any" recording information, meaning the notice is to state the pertinent recording information if there is any. Moreover, the claim to preserve cited the original record holder's severance deed. The original reservation deed is a piece of recording information upon which an heir's claim is based. See Wendt v. Dickerson , 5th Dist., 2018-Ohio-1034, 108 N.E.3d 1174, ¶¶ 2, 52-53 (finding the claims to preserve listed "the recording information upon which the claim is based" by citing to a 1952 deed containing the original reservation of one-half of the oil and gas and thus the heirs of the original record holders preserved the mineral interest).
{¶ 22} The plaintiff complains that allowing a claim to preserve to be filed by the heirs of the record holders does not facilitate the purpose of laws such as the recording statutes, the MTA, and the DMA to facilitate the reliance on public documents, to give notice of record, and to simplify and facilitate land transactions. The plaintiff states the evidence all shows the mineral interest was abandoned and refers to the doctrine of laches. Yet, a post-notice-of-abandonment claim to preserve is a statutory right which preserves the minerals from abandonment, and it is anticipated such a claim to preserve will be filed after 20 or more years have passed without a savings event. This argument, along with the argument that the claim merely takes the case out of the statute and into the court, makes it sound as if the plaintiff is presenting some common law abandonment claim. However, the Supreme Court has stated abandonment is now governed by the 2006 DMA. Corban , 149 Ohio St.3d 512, 2016 -Ohio- 5796, 76 N.E.3d 1089 at ¶¶ 31, 33. None of the DMA cases in the appellate courts or the Supreme Court were remanded to ascertain if the mineral interest was abandoned outside of the DMA, and such a claim was not in the plaintiff's complaint. If the claim to preserve was timely and was permitted to be filed under the 2006 DMA, there is no abandonment. As the claim was timely, the question is whether the Kirk heirs were permitted to file the claim, i.e., *1272 whether they were holders or the holders' successors or assignees.
{¶ 23} On this topic, the plaintiff states an heir of a record holder is not necessarily a holder of the mineral interest. Yet, the Kirk heirs are using the term "heir" in context: the heir[2] of the record holder in regard to the subject mineral interest . After reciting the statutory definition of a holder as including not just the record holder but also anyone who derives his rights from or has a common source with the record holder, we observed in Dodd : "Thus, holder would include any heirs or assigns of the Porters." Dodd , 7th Dist. No. 12 HA 6 at ¶ 54. We thereafter concluded the affidavit within the claim to preserve was summary judgment evidence the heirs were entitled to the mineral interest on the record holder's death and were thus holders. Id. at ¶¶ 63-65 (affirmed on other grounds, with this ground not being raised in the Supreme Court).
{¶ 24} The plaintiff quotes a footnote in the Supreme Court's Dodd case: "Presumably, the surface owner can challenge the accuracy of the mineral-interest holder's claim. But that is outside the operation of the Dormant Mineral Act, which addresses only whether a surface owner can employ the act's provisions to deem the mineral rights abandoned, reunite the mineral rights with the surface rights, and vest them in the surface owner." Dodd , 143 Ohio St.3d 293, 2015 -Ohio- 2362, 37 N.E.3d 147 at fn.4. See also id. at fn.2. As stated above, Dodd was a case where the surface owner challenged (in the trial court and appellate court) the right of an heir to file a claim to preserve. In addition, the footnote spoke of challenging the "accuracy" of the claim. However, the plaintiff does not challenge the factual accuracy of the sworn assertions that the Kirk heirs were the record holders' heirs and the successor holders. That is, the plaintiff does not contend the Kirk heirs were not entitled to inherit the mineral interest from one or both record holders based on the probate filings (and there was no evidence the record holders disposed of the mineral interest before their deaths).
{¶ 25} The plaintiff's rationale (for claiming the Kirk heirs are not holders) is not that the Kirk heirs would not have been entitled to have the specific mineral interest officially transferred into their names after the record holder's death. Rather, the plaintiff's rationale is based upon the failure of the Kirk heirs to ensure there occurred a record transaction which specifically referred to them as having inherited this particular mineral interest. In other words, the plaintiff argues the Kirk heirs, regardless of demonstrating their right to inherit the mineral interest, did not have the ability to file a claim to preserve without a recorded transaction specifically declaring their ownership of the mineral interest, which must be identified by description. The position is: a person who inherits all of a record holder's real estate under a will, a person who inherits the residue of a record holder's estate under a will that does not specifically dispose of the mineral interest, or a person who inherits a share of all the record holder's property under the laws of intestacy cannot preserve the mineral interest from abandonment by filing a claim to preserve if the particular mineral interest is not explicitly mentioned or transferred in the probate filings. (Such a position suggests the heirs of assets not listed *1273 in the record holder's estate inventory {and thus not issued a certificate of title in the probate court} would have the DMA claim to preserve deadline of 60 days to: open/reopen an estate, send out estate notices, have an administrator/executor appointed, file an amended inventory, record a certificate of title, and then file the claim to preserve.)
{¶ 26} The Kirk heirs urge this court to apply our holding in Warner (where many of the same heirs were defendants as to another mineral interest owned in part by John W. Kirk). In remanding this case for disposition of unaddressed issues, this court cited our contemporaneous Warner case as providing precedent on some remaining issues. Jefferis , 7th Dist. at ¶ 32, citing Warner v. Palmer , 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, 2017 WL 1102786. The Kirk heirs complain the trial court disregarded this court's holding on the issue of whether heirs of a deceased grantor who severed and reserved the mineral interest can preserve the minerals with a claim to preserve.
{¶ 27} In Warner , the trial court found a claim to preserve was invalid as the defendant-claimant was not entitled to file the claim. Warner , 7th Dist. No. 14 BE 0038 at ¶ 21. On appeal, the defendant argued the trial court improperly blended the analysis for whether there was a qualifying title transaction under the DMA with a determination as to who can file a post-notice claim to preserve. See id. at ¶ 22. It was noted the trial court granted judgment on the pleadings based on a legal theory that the claimant could not file a valid claim to preserve because there was no qualifying title transaction. Id. at ¶ 28. We opined: "this is not the standard to determine who is eligible to file a claim to preserve." Id. We stated the documents relied upon by the surface owner failed to show the Kirk heirs did not inherit the right of a record holder in the mineral interest, noting a claim to preserve can be filed by a holder or a holder's successor "whether on record or not." Id. It was observed "the statute does not connect the concept of who is a holder with the savings event requirement of recording a title transaction in the recorder's office." Id. at ¶ 23. This court ruled:
A person does not lose an inherited mineral interest under probate law merely because it was not listed during an estate administration; they may lose it due to other pertinent facts under a law such as the 2006 Dormant Mineral Act (via time lapse without a savings event and a failure to file a timely claim to preserve or affidavit identifying a savings event). However, if a person to whom the mineral interest should have been transferred during an estate administration (or their representative, such as an heir's trustee) files a timely post-notice-of-abandonment claim to preserve, then the person would not lose the mineral interest under the 2006 Dormant Mineral Act.
Id. at ¶ 26. In drawing these conclusions, we relied on the language of the statute.
{¶ 28} As aforementioned, the statute provides for service of the notice of abandonment by certified mail "to each holder or each holder's successor or assignees" and service by publication if service cannot be completed "to any holder." R.C. 5301.56(E)(1). See also R.C. 5301.56(G)(5). The notice shall contain the "name of each holder and the holder's successors and assignees, as applicable." R.C. 5301.56(F)(1). In response, the post-notice-of-abandonment claim to preserve can be filed by "a holder or a holder's successors or assignees." R.C. 5301.56(H)(1). An heir is a holder if his rights "succeed to the rights of" the record *1274 holder. See Warner , 7th Dist. No. 14 BE 0038 at ¶ 25.
{¶ 29} Additionally, a holder is broadly defined by the DMA. A "record holder" is only one type of "holder" under the DMA. The statute specifically defines holder as "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." (Emphasis added.) R.C. 5301.56(A)(1). There is no modifier in this definition requiring "record notice" or "notice of record" that a person derived her rights from the record holder.
{¶ 30} We conclude the trial court improperly applied the analysis concerning whether there existed a recorded title transaction to the issue of whether an heir of the record holder who (along with other heirs) was bequeathed all of the record holder's property was entitled to file a claim to preserve in order to thwart abandonment. (Likewise, the issue of investigating the addresses of the holder's successors for purposes of the certified mailing of the notice of abandonment prior to service by publication is a different issue than the issue of who can thereafter preserve the mineral interest by filing a claim to preserve.) A timely post-notice-of-abandonment claim to preserve used to thwart abandonment of a mineral interest can be filed by a holder. It can also be filed by a holder's successor or a holder's assignee.
{¶ 31} The DMA specifically states a person need not be a record holder to qualify as a holder. A person who has a common source with the record holder (if his claim does not indicate it is adverse to the record holder's interest) is statutorily defined as a holder. Furthermore, a person who derives her rights from the record holder can file a claim to preserve and successfully preserve the mineral interest (if her claim does not indicate it is adverse to the record holder's interest). A person who derives her rights from the record holder is herself a holder under the plain terms of the statute. The plaintiff's position would require us to ignore this statutory language or add modifiers to the person who derived her rights from the record holder.
{¶ 32} Under the DMA, entitlement to file a post-notice-of-abandonment claim to preserve does not depend on whether those inheriting a mineral interest had the specific mineral interest memorialized in the record. Contrary to the statement of the trial court and the plaintiff, "record notice" that a record holder's mineral interest was officially and specifically probated and placed into the name of those who filed the claim to preserve is not the test used by the statute to determine who is a holder or who is a successor or assignee of a holder. For purposes of the Supreme Court dicta referring to an "identifiable mineral holder" who presents a "chain of title" and preserves the mineral interest, this can be accomplished where the record holder owned the mineral interest at death, a claim to preserve is filed by an heir of the record holder, and probate filings in the county where the mineral interest is located show the heir's entitlement to inherit the estate, the real estate, or the residue of the record holder's estate (even if the probate filings do not show a specific listing of the mineral interest within the inventory or disposition by certificate of title[3] ). Unless the Supreme Court *1275 holds otherwise, we are maintaining this position.
{¶ 33} In accordance, we sustain the assignments of error filed by the Kirk heirs on the application of the language of the 2006 DMA on holders who can file a claim to preserve and thereafter avoid a court's declaration of abandonment. The trial court's judgment invalidating their claims to preserve and declaring the mineral interest abandoned under the 2006 DMA is reversed.
Alternative DMA argument
{¶ 34} Regarding the abandonment decision, the Kirk heirs alternatively argue the 1936 one-half mineral reservation was restated in a 1983 deed conveying the land (surface and the other one-half of the minerals) from Murphy to himself and his wife. (See A/E 1, pt. B at p. 8-9). They cite our Blackstone case which concluded a volume and page number is not required in order for a reference to a prior mineral reservation to be considered specific. See Blackstone v. Moore , 7th Dist., 2017-Ohio-5704, 94 N.E.3d 108, ¶¶ 37-38 (adopting an analysis of various factors for determining whether a reference is general or specific). That case is currently on appeal in the Ohio Supreme Court after a discretionary appeal was accepted in Blackstone v. Moore , 152 Ohio St.3d 1406, 2018-Ohio-723, 92 N.E.3d 878. The Kirk heirs note the 1983 deed in the plaintiff's chain of title was even more specific than the deed in Blackstone because: it named John W. and Helen S. Kirk as the parties who previously sold the land; it said they sold the land to Louie Hagedorn; it said they excepted and reserved one-half of all the oil and gas in and underlying the premises when sold to said grantee; and it specifically identified the prior deed by volume and page number.
{¶ 35} However, the cited Blackstone analysis was under the MTA, not under the DMA. The DMA requires the mineral interest to have been the "subject of" a title transaction which was recorded in the recorder's office in order to qualify as a savings event. R.C. 5301.56(B)(3)(a). The MTA does not contain this language. It is the MTA with its establishment of marketable title through extinguishment that is concerned with the root of title and the subsequent 40 years in the chain, not the DMA (which reunites minerals with the surface without regard to whether a prior reservation was restated in the root of title or a later surface deed). As to the DMA, this court has previously concluded the mineral interest is not the "subject of" a surface deed which merely contains a restatement of a prior mineral reservation. Shilts v. Beardmore , 7th Dist. No. 16 MO 0003, 2018-Ohio-863, 2018 WL 1225745, ¶¶ 9-10 ; Dodd v. Croskey , 7th Dist. No. 12 HA 6, 2013-Ohio-4257, 2013 WL 5437365, ¶ 39 ("Here, the primary purpose of the title transaction is the sale of surface rights. While the deed does mention the oil and gas reservations, the deed does not transfer those rights. In order for the mineral interest to be the 'subject of' the title *1276 transaction the grantor must be conveying that interest or retaining that interest"), affirmed on other grounds, Dodd v. Croskey , 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147.
{¶ 36} In sum, the alternative argument presented by the Kirk heirs, that the surface holder does not have a deed which conveys an interest in the Kirk mineral interest to them, is not relevant to a DMA analysis. This argument against abandonment under the DMA is misplaced as it involves an MTA analysis for extinguishment, which is discussed in their final three assignments of error. (In any event, the abandonment decision is reversed as set forth supra.)
ASSIGNMENTS OF ERROR THREE TO FIVE: MTA EXTINGUISHMENT
{¶ 37} The third through fifth assignments of error filed by the Kirk heirs provide:
"The trial court erred when it failed to apply the specific provisions of the Marketable Title Act ( R.C. 5301.56 ) and the applicable case law to the facts in this case and instead applied the general provisions of the Marketable Title Act."
"The trial court erred when it overruled Appellants' motion for summary judgment on the issue that the MTA general provisions do no reunite the severed mineral estate with the surface estate because there were title transactions which preserved the interests."
"The trial court erred when it overruled Appellants' motion for summary judgment on the issue that Appellees do not have a root deed granting them an interest in the minerals."
{¶ 38} If the MTA applies to a mineral interest, the Kirk heirs argue the filings in the probate estates of the record holders (Helen S. Kirk in 1965 and John W. Kirk in 1987) constitute title transactions even without a certificate of title as it shows they were the heirs of the record holders who inherited Helen's personal and real property (which would have included her half of the one-half mineral interest) and John's residue (which would have included any mineral interest he owned on death). They also argue the plaintiff's alleged root of title is a 1960 deed which repeats the Kirk mineral reservation, concluding this cannot be the root of title because it does not grant them title to the entire property (surface and minerals).
{¶ 39} Below, the plaintiff withdrew its motion for summary judgment on the MTA due to our Blackstone holding, regarding what constitutes a specific reference to a prior mineral reservation in a surface deed. Yet, the Kirk heirs had filed a cross-motion for summary judgment. They ask this court to proclaim the DMA is a specific statute which should be applied to a mineral interest instead of the general provisions of the remainder of the MTA. They cite cases from this district before the Supreme Court's Corban case made clear the distinction between the DMA's abandonment and the MTA's extinguishment (combined with "null and void" language). They cite R.C. 1.51 and 1.52. These statutes instruct courts to harmoniously construe conflicting statutes; the specific provision is only applied over the general provision if there is an irreconcilable conflict (unless the general provision is the later adoption and the manifest intent is that the general provision prevail).
{¶ 40} In Blackstone , a case currently on appeal in the Ohio Supreme Court, we found the trial court correctly allowed the plaintiff to argue under both the MTA and DMA as both apply to a mineral interest. Blackstone , 7th Dist. at ¶¶ 11-13, 40. We found a claim to preserve timely filed by the heirs under the 2006 DMA preserved *1277 the mineral interest from abandonment. Id. at ¶ 18. We then applied the MTA and found the mineral interest was not extinguished thereunder due to a reference to the mineral reservation in a surface deed. Id. at ¶¶ 28-40.
{¶ 41} Here however, the trial court ruled the claims to preserve were not filed by a holder and the mineral interest was abandoned . The trial court never reached the MTA extinguishment claim or the issues raised concerning the MTA. We generally refrain from ruling on arguments and claims not ruled upon by the trial court as the issues are not ripe for our review where the trial court proceeded as if they were moot due to another ruling. Jefferis , 7th Dist. at ¶¶ 30-31, citing Bowen v. Kil-Kare, Inc. , 63 Ohio St.3d 84, 88-89, 585 N.E.2d 384 (1992), fn. 5, Murphy v. Reynoldsburg , 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992) (de novo summary judgment review does not mean the trial court need not first rule on issues presented in motions), and a sampling of appellate cases.
{¶ 42} In Jefferis , we noted two cases where this court applied the 1989 DMA and refused to address 2006 DMA arguments not reached by the trial court and where the Supreme Court did not remand to this court to reach the 2006 DMA claims we refused to address; instead, the Court reversed one case and affirmed on other grounds and remanded to the trial court in another case. Jefferis , 7th Dist. at ¶¶ 30-31, citing Swartz v. Householder , 150 Ohio St.3d 341, 2016-Ohio-5817, 81 N.E.3d 1221 and Taylor v. Crosby , 150 Ohio St.3d 344, 2016-Ohio-5820, 81 N.E.3d 1223. More specifically, we took a position refusing to rule on an MTA extinguishment claim that was not reached by the trial court when ruling on abandonment; in other words, remand on unaddressed MTA claims is proper where a reviewing court reverses on the claims the trial court did address. See, e.g., Jefferis , 7th Dist. at ¶¶ 29, 32 ; Stalder v. Bucher , 7th Dist. No. 14 MO 0010, 2017-Ohio-725, 2017 WL 823760, ¶¶ 4, 15.
{¶ 43} In maintaining our position, we refrain from deciding the claim for which the trial court did not issue a ruling. The trial court did not find the mineral interest was extinguished under the MTA, failing to reach this claim because the court found abandonment of the minerals under the DMA. As we are reversing the abandonment decision, the case is remanded for further proceedings on the MTA extinguishment claim.
{¶ 44} The trial court's judgment is reversed, and this case is remanded for further proceedings.
Donofrio, J., concurs.
Waite, J., concurs.

The court specified assets passing by intestacy and applied the same theory to assets passing by a general devise in a will (where the mineral interest was not listed in the estate inventory).

The word "heir" could encompass those who inherited by will (including a beneficiary of a general devise of all assets or all real estate or a beneficiary of residuary clause) or by intestate succession as an heir at law. Without expressing an opinion on any distinctions, we note this is not a case involving the lack of a probate estate for a record holder.

If a certificate of title had been issued by the probate court (as the plaintiff suggests may be required in order for the heirs to be considered holders), one could argue the heirs would actually be considered the "record holder" as the record in general is defined as including official public records and encompasses a filing in the probate or other court. R.C. 5301.47(B) -(C) (these definitions apply to R.C. 5301.47 to 5301.56 ). Compare R.C. 5301.56(B)(3)(a) (one savings event which would preclude the filing of a notice of abandonment occurs where the mineral interest was subject to a title transaction plus the title transaction was filed or recorded in the county recorder's office where the lands are located). As holder is expressly defined as encompassing more than just a record holder, this may support the conclusion that a certificate of title is not a requirement to qualify as a holder. R.C. 5301.56(A)(1).