[Cite as *Henderson v. Stalder*, 2024-Ohio-3037.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

STEVEN C. HENDERSON ET AL.,

Plaintiffs-Appellees,

v.

STANLEY STALDER ET AL.,

Defendants-Appellees,

ALLAN HENDERSON ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0017**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2022-175

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Andrew P. Lycans*, Critchfield, Critchfield & Johnson, Ltd., for Plaintiffs-Appellees and

*Atty. Craig E. Sweeney* and *Atty. Zachary D. Eddy*, Taft, Stettinius & Hollister, LLP, for Defendants-Appellees and

*Atty. Brent A. Barnes* and *Atty. Jack F. Willems*, Geiger, Teeple, Robinson & McElwee, PLCC, for Defendants-Appellants.

Dated: August 9, 2024

_____

**HANNI, J.**

**{¶1}** Defendants-Appellants, Allan and Roseanne Henderson, appeal from a Monroe County Common Pleas Court judgment granting summary judgment in favor of Defendants/Cross-claimants/Counterclaimants-Appellees, Stanley and Marcia Stalder, on a complaint filed by Plaintiffs, Steven C. Henderson, John D. Henderson, and Patricia J. Henderson, for declaratory judgment and to quiet title as to a certain oil and gas interest. Because the Stalders did not fully comply with the Dormant Mineral Act (DMA) in having the oil and gas interest at issue declared abandoned and vested in them as the surface owners, the trial court's judgment is reversed and the matter is remanded.

**{¶2}** This case concerns the ownership of the oil and gas rights underlying approximately 15.669 acres of property in Monroe County (the Property).

**{¶3}** In 1910, S.W. and Aura Egger reserved one-half of all coal, oil, and gas underlying the Property (Egger Reservation) in a warranty deed to Caroline Snider and the heirs of August Snider:

> Excepting and reserving all timber on said lands together with the right of way for the purpose of removing the same for the period of 2 years from the date hereof. Also excepting the one-half of all coal, oil and gas in and underlying said premises.

(June 2, 2023 Joint Motion for Summary Judgment, Ex. A). The Egger Reservation created the Egger Interest underlying the Property. Appellants, Allan and Roseanne Henderson (the Henderson Appellants), and Plaintiffs, Steven Henderson, John Henderson, and Patricia Henderson (the Henderson Plaintiffs), now claim title to the Egger Interest.

**{¶4}** Appellees, the Stalders (the Stalders), are the current surface owners of the Property. Prior to the Stalders' ownership, the Property was owned by Appellee Stanley Stalder and his brother Richard Stalder.

Case No. 23 MO 0017

**{¶5}** Stanley and Richard were approached by oil and gas companies regarding leasing the oil and gas rights underlying the Property. It was then that Stanley and Richard discovered the Egger Reservation.

**{¶6}** Stanley and Richard hired an attorney to aid in their effort to have the Egger Interest deemed abandoned and vested in the surface under the DMA. The attorney hired Knight Research, Ltd. to perform title research. Jessica Wielitzka performed the title research. She prepared two title reports that outlined the chain of title to the Property and the Egger Reservation.

**{¶7}** After searching the Monroe County public records and finding no heirs, Wielitzka conducted additional internet research. Wielitzka's research revealed that "Virginia" Egger Henderson may have been an heir to the Eggers. It was determined that "Virginia" was actually "Vivian" Egger Henderson. The Henderson Appellants and Henderson Plaintiffs are Vivian's nieces/nephews through marriage. A potential address was identified for Vivian in Portage County. Stanley and Richard attempted service via certified mail at that address on June 15, 2014. However, the address was actually for property previously owned by the Henderson Appellants. The certified mail was returned. On June 27, 2014, Stanley and Richard served notice on the Eggers and their heirs and assigns by publication in *The Monroe County Beacon*. This notice gave any potential holders until July 26, 2014, to file a claim to preserve or an affidavit identifying a savings event.

**{¶8}** By August 18, 2014, no mineral interest holder had filed a claim to preserve or an affidavit identifying a savings event. Stanley and Richard subsequently filed an Affidavit of Abandonment pursuant to the DMA.

**{¶9}** By September 29, 2014, still no mineral interest holder had filed a claim to preserve or an affidavit identifying a savings event. Stanley and Richard then recorded a Notice of Failure to File on September 20, 2014, indicating the Egger Interest was deemed abandoned and vested in Stanley and Richard. The Stalders have since entered into oil and gas leases for the premises.

**{¶10}** On June 24, 2022, the Henderson Plaintiffs filed a complaint for declaratory judgment and to quiet title to the mineral interest. They claimed the abandonment process was ineffective and they are the rightful owners of the oil and gas interest. The Stalders

filed an answer, counterclaim (against the Henderson Plaintiffs), and cross-claim (against the Henderson Appellants) raising claims under the DMA and the Marketable Title Act (MTA) for declaratory judgment and to quiet title. The parties then filed competing motions for summary judgment.

{¶11} On September 18, 2023, the trial court granted summary judgment in favor of the Stalders on all claims. It found that all material facts were matters of public record. The court determined that Richard and Stanley undertook reasonable diligence to locate any mineral interest holders before resorting to notice by publication. Therefore, the court found the abandonment was proper and granted summary judgment in favor of the Stalders on all claims, counterclaims, and cross-claims.

{¶12} The Henderson Appellants filed a timely notice of appeal on October 17, 2023. They now raise three assignments of error for our review.

{¶13} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 2005-Ohio-4559, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶14} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

{¶15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher*, 75 Ohio St.3d at 296. The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).

**{¶16}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

**{¶17}** The Henderson Appellants' first assignment of error states:

THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF STALDER SINCE STALDER FAILED TO MEET THEIR BURDEN OF PROVING PERFORMANCE OF A REASONABLY DILIGENT SEARCH TO LOCATE THE NAMES AND ADDRESSES OF THE MINERAL HOLDERS UNDER *FONZI V. BROWN*, 169 OHIO ST.3D 70, 2022-OHIO-901, 202 N.E.3D 604.

**{¶18}** The Henderson Appellants agree that a general search of the Monroe County public records in 2014 would not have revealed the name or address of Vivian Henderson. But they assert that at that time, the Stalders had actual knowledge through their agent, Wielitzka, who had found on ancestry.com that Vivian Henderson died in 2000 as a resident of Mahoning County. Because the Stalders allegedly possessed this information, the Henderson Appellants argue the Stalders should have searched the public records of Mahoning County. Had they done so, the Stalders would have found Vivian's estate, which contained the names and addresses of her heirs. Because the Stalders failed to search the Mahoning County public records, the Henderson Appellants argue the Stalders did not conduct a reasonably diligent search.

**{¶19}** The DMA provides that "[a]ny mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied" and no savings events occur. R.C. 5301.56(B). "If a holder or a holder's successors or assignees claim that the mineral interest that is the subject of a notice under division (E) of this section

has not been abandoned, the holder or the holder's successors or assignees, not later than sixty days after the date on which the notice was served or published, as applicable, shall file" either a claim to preserve or an affidavit in compliance with the statute. R.C. 5301.56(H)(1)(a)(b). A timely claim to preserve by any holder preserves the rights of all holders of a mineral interest in the same land. R.C. 5301.56(C)(2).

{¶20} Pursuant to R.C. 5301.56(E)(1), before a mineral interest becomes vested in the surface owner, the surface owner shall:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

{¶21} The Ohio Supreme Court has stated that a surface owner need not specifically identify by name every holder before using notice by publication. *Gerrity v. Chervenak*, 2020-Ohio-6705, ¶ 19. The Court observed that, "[c]onstruing the Dormant Mineral Act as ineffective unless the surface owner identifies every mineral-interest holder, including every successor or assignee of a record holder, would negate the express legislative purpose of the act." *Id.* at ¶ 21.

{¶22} As to what constitutes a reasonable search for holders under R.C. 5301.56(E)(1), this Court has stated:

> We have made it abundantly clear that what constitutes reasonable due diligence will depend on the facts and circumstances of each case. We again decline to establish a bright-line rule requiring a specific search process, and reaffirm that what constitutes reasonable due diligence will depend on the facts and circumstances of each case. We emphasize that R.C. 5301.56(E)(1) makes it clear that since notice by publication is a last

resort, a sincere, diligent effort by the researcher is required before service by publication is appropriate.

*Fonzi v. Miller*, 2020-Ohio-3739, ¶ 34 (7th Dist.), appeal allowed, 2020-Ohio-4574.

**{¶23}** Without establishing a strict rule, the Ohio Supreme Court outlined reasonable steps a surface owner should take before resorting to notice by publication:

[T]he surface owner must consult the public-property records in the county in which the surface property is located to determine whether a saving event has occurred. If no saving event is evident, the surface owner must also consult the chain of title to determine the record holder or record holders of the mineral interest—the starting point for determining who the surface owner must attempt to notify pursuant to R.C. 5301.56(E)(1). In addition to property records in the county in which the land that is subject to the mineral interest is located, a reasonable search for holders of a severed mineral interest will generally also include a search of court records, including probate records, in that county.

*Gerrity* at ¶ 35.

**{¶24}** In *Gerrity*, the surface owner searched the public records in the county where the property was located for any holders, located an address in another county for a possible holder, searched that county's public records to no avail, and unsuccessfully attempted service at one potential address. No internet search was attempted. The surface owner then resorted to notice by publication. The Ohio Supreme Court found this search reasonable.

**{¶25}** In *Shilts v. Beardmore*, 2018-Ohio-863 (7th Dist.), this Court found reasonable a search that included a search of the public records of the county where the property was located, the records of the Ohio Department of Natural Resources, and an internet search. There was no attempt to serve a holder by certified mail as no heirs were located. This Court found the search to be reasonable.

**{¶26}** In *Crum v. Yoder*, 2020-Ohio-5046, ¶ 62 (7th Dist.), we found "the surface owners engaged in reasonable efforts by using the names of the record holders to search the public records of Monroe County and the probate records of Belmont County (as well

Case No. 23 MO 0017

as Monroe County). It is undisputed that no heirs were revealed by these searches. A general internet search is not a mandate in determining the identity of the heirs of a record holder[.]"

{¶27} In discussing a case where the surface owner should have searched beyond the public records of the county where the property was located, this Court stated:

> In *Fonzi [v. Brown]*, the 1952 deed transferring Monroe County property and reserving a mineral interest showed the grantor lived in Washington County, Pennsylvania. *Fonzi*, 169 Ohio St.3d 70, 2022-Ohio-901, 202 N.E.3d 604 at ¶ 2. Before serving notice of abandonment by publication, the surface owners searched Monroe County public records and performed "limited Internet research" without attempting to search the public records in Washington County, Pennsylvania, even though that was the mineral holder's last known residence. *Id*. at ¶ 26. The trial court granted summary judgment for the surface owners. We reversed, finding this was not a reasonably diligent search. *Fonzi v. Brown*, 7th Dist. Monroe No. 19 MO 0012, 2020-Ohio-3631, 2020 WL 3639886, ¶ 19 (where the surface owner argued the law did not require a search beyond the public records in the county where the property is located, we explained further search requirements depend on the circumstances), *citing, e.g., Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285 (7th Dist.) (where the mineral holders argued an internet search was required for a reasonably diligent search, we rejected a bright-line approach and held the public records search was sufficient because the probate records for the holder's estate gave the surface owners no reason to believe an internet search would have located potential heirs).

> The Supreme Court upheld our decision, finding a lack of reasonable diligence because the surface owners failed to attempt personal service at the last known address and "failed to search public records beyond the county where the mineral interests were located, despite having knowledge that the mineral-interest holder did not reside within that county when the

reservation was made * * *." *Fonzi*, 169 Ohio St.3d 70, 2022-Ohio-901, 202 N.E.3d 604 at ¶ 28. In general, surface owners must not disregard information about the holder in the public records in order to proceed directly to publication. *See id.* (on the subject of last known address).

*Jeffco Resources, Inc. v. Abrecht*, 2023-Ohio-4712, ¶ 31-32 (7th Dist.).

**{¶28}** The Henderson Appellants contend in this case that Stanley and Richard Stalder acquired actual knowledge through Wielitzka's search on ancestry.com that Vivian Egger Henderson died in 2000 as a resident of Mahoning County. Therefore, they claim reasonable diligence required Stanley and Richard to search the public records of Mahoning County before resorting to notice by publication.

**{¶29}** The problem with the Henderson Appellants' argument, however, is that there is no evidence that Stanley and Richard had actual knowledge that Vivian died in 2000 as a resident of Mahoning County. The evidence shows that they had knowledge of her death, but not that she may have died a resident of Mahoning County.

**{¶30}** In their search for a holder, Stanley and Richard hired an attorney who specializes in oil and gas law. (Warnock Dep. 15-16). The attorney then hired Knight Research Ltd.'s Wielitzka, a title examiner, to conduct a mineral title search and perform additional research. (Warnock Dep. 19, 27; Warnock Aff. ¶ 5).

**{¶31}** Wielitzka provided two reports outlining the chain of title to the Property and the Egger Interest. (Wielitzka Dep. 18-25). Wielitzka's report indicated that the Egger Interest was created in 1910 by S.W. and Aura Egger. (Wielitzka Dep. Ex. F). The report found S.W.'s estate, noting that S.W. died leaving everything to Aura. (Wielitzka Dep. Ex. F). The report stated that according to ancestry.com, Aura died in 1946. (Wielitzka Dep. Ex. F). Aura left three heirs: Bertha Egger (who died single and childless in 1958); Grace Egger Clifford (who died widowed in 1970 with no children found); and George Egger (who died in 1966 with two daughters living at the time - Ruth Egger and "Virginia" Egger Henderson). (Wielitzka Dep. Ex. F). The report indicated that "Virginia" died widowed in 2000 and no records could be found for Ruth. (Wielitzka Dep. Ex. F). The report indicated there were no probate records for Bertha Egger, Grace Egger, or George Egger, though they all died in Monroe County. (Wielitzka Dep. Ex. F).

{¶32} Based on Wielitzka's research and additional searching, the attorney came to believe that "Virginia" Egger Henderson was actually "Vivian" Egger Henderson. (Warnock Aff. ¶ 10). He also identified a possible address in Portage County, Ohio where Vivian may have lived, which is where the Stalders attempted service by certified mail. (Warnock Aff. ¶ 10).

{¶33} During Wielitzka's deposition, the Henderson Appellants' counsel introduced an exhibit that he stated he printed from ancestry.com on April 11, 2023. (Wielitzka Dep. 34; Ex. H to Ex. O). This is the only place in the record where it is suggested that Vivian died as a resident of Mahoning County. Neither the title reports nor deposition testimony make any mention that Vivian may have resided in Mahoning County.

{¶34} In discussing online searches, this Court has observed:

Regarding general online searches, the information available on the internet is not always reliable. Furthermore, it changes continually. Previously printed information is gradually put on the internet, but the date of internet publication does not necessarily match the date of print publication for purposes of ascertaining what information was available years ago when statutory abandonment proceedings were utilized as to a property.

*Crum v. Yoder*, 2020-Ohio-5046, ¶ 61 (7th Dist.). Hence, just because information may have been available on ancestry.com on April 11, 2023 (when the Henderson Appellants' attorney searched), does not mean this same information was available in 2014 (when the attorney and title examiner searched).

{¶35} The Stalders were reasonably diligent in their search before resorting to notice by publication. They took all of the steps outlined by the Ohio Supreme Court in *Gerrity*, 2020-Ohio-6705: (1) they consulted the public-property records in Monroe County where the Property is located; (2) they researched the chain of title to determine the record holders of the Egger Interest; and (3) they searched Monroe County probate court records for holders of the Egger Interest. They went even further by conducting an internet search and attempting service by certified mail at a possible address for a

deceased potential heir. These steps satisfy the reasonable diligence standard in this case.

**{¶36}** Accordingly, the Henderson Appellants' first assignment of error is without merit and is overruled.

**{¶37}** The Henderson Appellants' second assignment of error states:

THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF STALDER SINCE THE STALDER'S ABANDONMENT NOTICE PUBLISHED IN THE *MONROE COUNTY BEACON* WAS DEFECTIVE ON ITS FACE AS IT FAILED TO NAME THE KNOWN HOLDERS OF THE EGGER MINERAL INTEREST.

**{¶38}** Here, the Henderson Appellants argue the Stalders attempted to serve Vivian via certified mail as the sole mineral interest holder. After that service by certified mail failed, the Stalders then attempted service by publication in *The Monroe County Beacon*. The problem, however, the Henderson Appellants contend, is that the notice by publication did not name Vivian. They claim this failure was fatal to the Stalders' efforts to use the DMA.

**{¶39}** The Stalders, however, contend their notice by publication was sufficient and in compliance with the DMA. They state the only record holders in this case were S.W. Egger and Aura Egger.

**{¶40}** Pursuant to R.C. 5301.56(F)(1), the notice required under R.C. 5301.56(E)(1) shall contain, in addition to other requirements, "[t]he name of each holder *and the holder's successors and assignees, as applicable*[.]" (Emphasis added). A "holder" is "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." R.C. 5301.56(A)(1).

**{¶41}** In their notice by publication, the Stalders only listed S.W. and Aura Egger as holders of the Egger Interest. They did not list Vivian Egger Henderson, despite having traced her interest in the Egger Interest. Had they listed Vivian, it is possible the Henderson Appellants may have responded to the notice as they are her heirs.

Case No. 23 MO 0017

**{¶42}** Clearly, in this case S.W. and Aura Egger were holders of the mineral interest. But Vivian Egger Henderson was identified by the Stalders as a successor and as someone who "derived her right" to the Egger Interest from S.W. and Aura Egger. R.C. 5301.56(F) states that the R.C. 5301.56(E) notice "shall" contain the name of each holder and the holder's successors and assignees, *as applicable*.

**{¶43}** The Ohio Supreme Court previously addressed the argument that because R.C. 5301.56(F)(1) states that the notice shall contain the name of each holder and the holder's successors and assignees, as applicable, the only way that an interest can be abandoned is if each holder is specifically named in the notice. *Gerrity*, 2020-Ohio-6705. The Court found:

> We cannot, however, read R.C. 5301.56(F)(1) in isolation. Its mandate must be understood in light of the rest of the statutory scheme, including R.C. 5301.56(E)(1), which contains an express provision for notice by publication when service of notice by certified mail "cannot be completed to any holder." Plainly, when a holder cannot be identified, service by mail cannot be completed on that holder. At that point, notice by publication is permitted under the express terms of R.C. 5301.56(E)(1). It would strain credulity to read R.C. 5301.56(E)(1) to allow notice by publication when a holder cannot be identified but at the same time to require identification of the holder in the notice itself.

> On the other hand, reading the provision to not require identification of an unidentified holder is consistent with the qualifier in R.C. 5301.56(F)(1) that the notice shall identify "each holder and the holder's successors and assignees, *as applicable*." (Emphasis added.) When notice is being provided through publication because a holder cannot be identified, the identity of the holder is "not applicable."

> Considering R.C. 5301.56(F)(1) in the context of R.C. 5301.56(E)(1)'s explicit grant of authority for notice by publication, we think the best reading of the statute is that a surface owner need not specifically identify by name every holder, as broadly defined in R.C. 5301.56(A)(1).

Case No. 23 MO 0017

*Id.* at ¶ 17-19.

**{¶44}** Thus, *Gerrity* suggests that when the identity of a holder is applicable, in other words when their identity is known, the notice by publication shall include their name. Because the Stalders did not include Vivian Egger Henderson's name in the notice by publication, they did not comply with the mandates of R.C. 5301.56. For this reason, the abandonment was not completed and summary judgment was not proper on the DMA claim.

**{¶45}** Accordingly, the Henderson Appellants' second assignment of error has merit and is sustained.

**{¶46}** The Henderson Appellants' third assignment of error states:

THE TRIAL COURT ERRED BY RENDERING A "BLANKET" SUMMARY JUDGMENT IN FAVOR OF STAL[D]ER ON "ALL COUNTS" WHEN APPELLEES['] CLAIMS UNDER THE MARKETABLE TITLE ACT ARE INVALID.

**{¶47}** The trial court did not address the Stalders' MTA claim. Instead, the court simply found that the abandonment was upheld and granted judgment to the Stalders on *all* counts in their counterclaims and cross-claims.

**{¶48}** The Henderson Appellants now argue the trial court erred in ruling in favor of the Stalders on the MTA claims. They ask that we remand this matter to the trial court to rule on these issues. They assert that each of the Stalders' chain of title deeds within the last 40 years refer to the Egger Interest.

**{¶49}** Pursuant to the MTA, a person who has an unbroken chain of title of record to any interest in land for 40 years or more has a marketable record title to such interest. R.C. 5301.48. A "marketable record title" is defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code." R.C. 5301.47(A). "Root of title" is defined as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date of forty years prior

to the time when marketability is being determined." R.C. 5301.47(E). The effective date of the root of title is the date it was recorded. R.C. 5301.47(E).

{¶50} The Henderson Appellants correctly point out that the trial court did not address the MTA claim. In addressing this issue previously, this Court has stated:

> "We generally refrain from ruling on arguments and claims not ruled upon by the trial court as the issues are not ripe for our review where the trial court proceeded as if they were moot due to another ruling." *Jefferis Real Estate Oil & Gas Holdings, LLC v. Schaffner Law Offices, LPA*, 7th Dist. Belmont, 2018-Ohio-3733, 109 N.E.3d 1265, ¶ 41. See also *Taylor v. Crosby*, 150 Ohio St.3d 344, 2016-Ohio-5820, 81 N.E.3d 1223, ¶ 1 (remanding to the trial court to address the arguments on the 2006 version of the Dormant Mineral Act which were not addressed by the appellate court as the trial court did not rule on them); *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 88-89, 585 N.E.2d 384, fn. 5 (1992); *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992) (de novo summary judgment review does not mean the appellate court must address issues in the motions which the trial court never reached).
>
> It has been this court's regular position in numerous recent mineral rights cases to remand for the trial court to rule on unaddressed MTA issues where the trial court never reached the MTA's application (for instance, because it relied on only the DMA).

*West v. Bode*, 2019-Ohio-4092, ¶ 61-62 (7th Dist.), aff'd, 2020-Ohio-5473, ¶ 62-63.

{¶51} Based on this Court's past practice, we must remand this matter for the trial court to address the MTA claim.

{¶52} Accordingly, the Henderson Appellants' third assignment of error has merit and is sustained.

Case No. 23 MO 0017

{¶53} For the reasons stated above, the trial court's judgment is reversed and the matter is remanded for the trial court to address the MTA claim.

Waite, J., concurs.

Robb, P.J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the Henderson Appellants' first assignment of error is without merit and is overruled. The Henderson Appellants' second and third assignments of error have merit and are sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is reversed. We hereby remand this matter to the trial court to address the Marketable Title Act claim. Costs to be taxed against the Appellees Stanley and Marcia Stalder.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**