[Cite as *Sharp v. Miller*, 2018-Ohio-4740.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

JEFFREY H. SHARP, et al.,

Plaintiffs-Appellants
Cross-Appellees,

v.

DAVID R, MILLER, et al.,

Defendants-Appellees
Cross-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 JE 0022**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 15 CV 108

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sean R. Scullin,* Scullin & Cunning, LLC, 940 Windham Ct., Ste. 4, Boardman, Ohio 44512, for Plaintiffs-Appellants/Cross-Appellees Jeffrey H. Sharp, Bradley W. Sharp, Gregory C. Smith, J. Kent Smith, Jeffrey S. Smith, Lelah Cline Smith, and Scott Johnson

*Atty. Lawrence T. Piergallini*, 131 Third Street, P.O. Box 7, Tiltonsville, Ohio 43963, for Defendants/Appellees David R. Miller and Ruth A. Miller

*Atty. Thomas A. Hill* and
*Atty. Richard F. Protiva*, 6075 Silica Road, Suite A, Austintown, Ohio 44515-1081, for

Defendants-Appellees/Cross-Appellants, Eric Petroleum Corp., and the Brocker Royalty Trust.

*Atty. Clay K. Keller*, Jackson Kelly PLLC, 50 S. Main Street, Akron, Ohio  44308, for Defendants-Appellees Chesapeake Exploration, L.L.C., Chesapeake Appalachia, L.L.C., Total E&P USA, Inc., CHK Utica, L.L.C., Pelican Energy, L.L.C. and Dale Pennsylvania Royalty, LP.

Dated:  November 26, 2018

WAITE, J.

**{¶1}** This oil and gas case involves the ownership of mineral interests that lie beneath approximately 153 acres of land located in Springfield Township, Jefferson County.  Appellants/Cross-Appellees Jeffrey H. Sharp, Bradley W. Sharp, Gregory C. Smith, J. Kent Smith, Jeffrey S. Smith, Lelah Cline Smith, and Scott Johnson (collectively referred to as "Appellants") appeal a judgment entry granting summary judgment in favor of Appellees David R. and Ruth A. Miller (collectively referred to as "the Millers").  Appellants argue the trial court erroneously ruled that their interest in the minerals was abandoned pursuant to common law and the 2006 Dormant Mineral Act ("DMA").  Appellees/Cross-Appellants Eric Petroleum Corporation ("EPC") and Brocker Royalty Trust ("Brocker") filed a cross-appeal seeking a declaration from this Court that an oil and gas lease entered into by EPC and the Millers is not a nullity.  For the reasons provided, the trial court correctly determined that Appellants' interests were abandoned pursuant to the 2006 DMA.  Because the 2006 DMA controls, Appellants' arguments regarding common law abandonment are moot.  As to the cross-appeal, the trial court's dicta did not affect the validity of the oil and gas lease between the Millers and EPC.  Finally, EPC/Brocker waived their Marketable Title Act ("MTA") argument.  Accordingly, the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} The property at issue in this matter was originally owned by I.W. Poole and R.S. Smith. In a March 3, 1944 deed, Poole and Smith transferred the surface rights to Henry and Lucy McClosky. Poole and Smith reserved mineral interests in the property using language in the deed: "Excepting and reserving all mineral rights." (3/3/44 Deed.) Following a series of conveyances, the surface rights are currently owned by the Millers.

{¶3} On May 20, 2004, the Millers entered into an oil and gas lease with Mason Dixon Energy, Incorporated. The record is devoid of the details regarding the Miller/Dixon lease. On June 30, 2009, the Millers entered into an oil and gas lease with EPC. After several assignments, Brocker obtained an interest in the lease.

{¶4} On July 9, 2014, the Millers filed a notice of intent to declare the mineral interests abandoned. They could not locate the names or addresses of any Poole/Smith heirs and filed the notice by publication. On or about August 10, 2014, East Ohio Minerals Recovery, LLC ("EOMR") learned of this notice and informed Jeffrey Sharp that he and his brother, Bradley, might be heirs to a reservation of mineral interest and would need to file something by early September of 2014.

{¶5} On August 15, 2014, the Sharps' attorney ordered a title search on a farm formally owned by the Sharps' grandfather (the property at issue) and discovered that a coal interest had been reserved. On August 27, 2014, the Sharps' attorney requested a copy of the March 3, 1944 deed and learned that the mineral interests had also been reserved. On September 2, 2014, the Millers filed an affidavit of abandonment. On September 10, 2014, the Sharps' attorney requested a second title search which

revealed the 2009 oil and gas lease between the Millers and EPC. On November 6, 2014, the attorney requested an updated title report which showed the affidavit of abandonment. On November 12, 2014, Jeffrey and Bradley Sharp filed a claim of preservation.

{¶6} On March 17, 2015, the Sharps filed a complaint against the following individuals: the Millers, EPC, Brocker, Dale Pennsylvania Royalty, L.P., Chesapeake Explorations, LLC, Chesapeake Appalachia, LLC, Total E&P USA, Inc., CHK Utica, LLC, Pelican Energy, LLC, CGas Properties, L.P., Belden & Blake Corporation, EnerVest Energy Institutional Fund IX, L.P., EnerVest Energy Institutional Fund XI-WI, L.P., EnerVest Energy Institutional Fund XI-A, L.P., and EnerVest Energy Institutional Fund IX-WI, L.P. The complaint sought to have the court declare that Appellees did not comply with the 2006 DMA, sought quiet title and termination of the Miller/EPC lease, and raised a conversion claim.

{¶7} On April 3, 2015, Appellants voluntarily dismissed the following defendants: CGas Properties L.P., Belden & Blake Corporation, EnerVest Energy Institutional Fund IX, L.P., EnerVest Energy Institutional Fund XI-WI, L.P., EnerVest Energy Institutional Fund XI-A, L.P., and EnerVest Energy Institutional Fund IX-WI, L.P.

{¶8} On June 15, 2015, Appellants filed an amended complaint seeking ejectment and the value of the rents and profits resulting from the oil and gas leases. The amended complaint asked for a declaratory judgment that the two oil and gas leases entered into by the Millers constituted savings events under both the 1989 and 2006 version of the DMA and that the Millers failed to comply with the notice requirements of the 2006 DMA. The complaint also joined later discovered heirs June

Smith, Jane Doe, Lelah Cline Smith, Gregory C. Smith, Jeffrey S. Smith, J. Kent Smith, and Scott W. Johnson. June Smith did not file an answer and the court entered default judgment against her.

{¶9} On June 29, 2015, EPC and Brocker filed an answer to Appellants' amended complaint and to the Millers' counterclaim. On the same date, the remaining defendants filed an answer: Dale Pennsylvania Royalty, L.P., Chesapeake Explorations, LLC, Chesapeake Appalachia, LLC, Total E&P USA, Inc., CHK Utica, LLC, and Pelican Energy, LLC. It is unclear whether Dale Pennsylvania Royalty and Chesapeake remained parties to this action. On July 10, the Millers filed an answer.

{¶10} On April 11, 2017, the parties filed competing motions for summary judgment. The trial court held a hearing on April 24, 2017. However, the trial court judge recused herself from the case on June 22, 2017 and a new judge was assigned. On October 25, 2017, the trial court granted summary judgment in favor of Appellees. The court ruled that the mineral interests of R.S. Smith and I.W. Poole were abandoned pursuant to the 2006 DMA. The court additionally ruled that Poole's interests were abandoned pursuant to common law. Appellants filed this timely appeal. Because Appellants' second assignment of error is determinative, the assignments of error are addressed out of order.

Summary Judgment

{¶11} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no

genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

{¶13} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

Case No. 17 JE 0022

ASSIGNMENT OF ERROR NO. 2

The trial court erred by finding that Appellants' mineral interest were [sic] abandoned pursuant to the 2006 Ohio Dormant Mineral Act.  Judgment Entry, at 2.

{¶14} Appellants raise several reasons to support their contention that the trial court erroneously ruled their interest in the minerals was abandoned pursuant to the 2006 DMA.  First, Appellants argue that the Millers failed to comply with the notice requirements of R.C. 5301.56(E).  Appellants argue that the Millers did not use reasonable diligence when researching potential heirs, making service by publication improper.  Second, Appellants argue that two oil and gas leases entered into by the Millers are title transactions that constitute a savings event.

{¶15} We first address whether Appellees were permitted to file notice of intent to declare the mineral interests abandoned by publication.  Pursuant to R.C. 5301.56(E)(1), a surface owner attempting to reunite the surface with the mineral interests must:

Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned.  If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located.  The notice shall contain all of the information specified in division (F) of this section.

**{¶16}** R.C. 5301.56(E)(1) allows notice by publication when notice cannot be completed through certified mail. An attempt to provide notice by certified mail is unnecessary where a reasonable search fails to reveal the names or addresses of potential heirs who must be served. *Shilts v. Beardmore*, 7th Dist. No. 16 MO 0003, 2018-Ohio-863, ¶ 15, appeal not allowed by *Shilts v. Beardmore*, 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 464. Appellants ask this Court to determine the extent of the efforts required to satisfy reasonable due diligence in locating heirs before service by publication can be employed.

**{¶17}** In *Shilts*, we reviewed whether the following search efforts satisfied the "reasonable due diligence" standard: probate records, public records, Ohio Department of Natural Resources ("ODNR") records, and an internet search. *Id.* at ¶ 14. We found that, based on the facts of that case, these efforts satisfied the due diligence requirement. *Id.* at ¶ 15. Appellants ask this Court to require these exact efforts in every case. Contrary to Appellants' arguments, we did not establish in *Shilts* a bright-line rule or definition of "reasonable due diligence." Because the standard relies on the reasonableness of any party's actions, whether that party's efforts constitute "due diligence" will depend on the facts and circumstances of each individual case. In other words, reasonable actions in one case may not be reasonable in another case.

**{¶18}** Appellees in this matter provided evidence in summary judgment in the form of two affidavits. The first affidavit is from Michael J. Calabria, an attorney retained by EPC as an expert witness. (4/17/17 Calabria Aff.) In his affidavit, Calabria avers that he reviewed Appellees' efforts in this matter and concluded that those efforts satisfied reasonable due diligence. While we note that this testimony improperly goes

to the legal question to be determined by the court, we also note that this witness set forth the efforts undertaken. Calabria stated that Appellees searched public records, specifically probate and deed records, and were unable to locate any heirs. The sole address obtained in the search was a post office box that formally belonged to I.W. and Ruth Poole. Calabria stated that the search also revealed I.W. Poole's release of estate from administration, which did not refer to the mineral interests. A title report also failed to reveal any potential heirs.

{¶19} Appellees also filed an affidavit from Richard F. Protiva. Protiva apparently undertook an exhaustive search to locate heirs during trial preparation which did not yield information on all heirs. Additionally, he was unable to confirm that the information he did obtain was accurate. He could not ensure that the information he found correlates to the correct individual heir. He began by conducting an online search using paid subscription services such as ancestry.com, world vital records, and MyHeritage Company. Next, he visited the Carroll County Genealogical Society. Based on his efforts up to this point, he was able to locate a record for Florence Edna Poole Sharp (Jeffrey and Bradley Sharp's mother.) He used that information to conduct public record searches, including probate records. He then used the names in the complaint to connect the names he found in his search efforts. Using this information, he conducted another internet search and contacted a librarian at Arizona State University. Again, he was unable to locate all heirs and could not confirm that the information he had obtained was correct.

{¶20} Appellants argue that the trial court erroneously relied on a statement at the hearing made by EPC counsel that it took more than 80 hours for Protiva to find a

partial list of heirs. Although the fact that the search took more than 80 hours to complete is not in Protiva's affidavit, it is apparent from his affidavit that his search consumed a great deal of time. Regardless, the search that occurred prior to the filing of the notice is at issue here, not any later-conducted search.

{¶21} Based on Calabria's affidavit, prior to filing the complaint Appellees searched available public records; they undertook to search probate records and recorded deeds. The only difference between their search and the *Shilts* search is an internet component. However, an internet search would not likely have been helpful in this case, because the only names available to Appellees were Smith and Poole. There is no evidence that a simple internet search would have revealed the actual Smith/Poole heirs. Based on the facts and circumstance of this case, Appellees' public record search constituted reasonable due diligence.

{¶22} Next, we must address whether Appellants preserved their interests in accordance with R.C. 5301.56(H). R.C. 5301.56(H)(1) states:

> If a holder or a holder's successors or assignees claim that the mineral
>
> interest that is the subject of a notice under division (E) of this section has
>
> not been abandoned, the holder or the holder's successors or assignees,
>
> not later than sixty days after the date on which the notice was served or
>
> published, as applicable, shall file in the office of the county recorder of
>
> each county where the land that is subject to the mineral interest is
>
> located one of the following:
>
> (a) A claim to preserve the mineral interest in accordance with division (C)
>
> of this section;

(b) An affidavit that identifies an event described in division (B)(3) of this section that has occurred within the twenty years immediately preceding the date on which the notice was served or published under division (E) of this section.

{¶23} There is no question that Appellants failed to file a timely claim of preservation or an affidavit identifying a savings event. While Appellants claim that they did not know Appellees filed a notice of intent to abandon, the record demonstrates that Appellants did learn of their possible interest prior to the deadline for filing a timely claim of preservation.

{¶24} The Millers published a notice of intent to declare the mineral interests abandoned on July 9, 2014. Pursuant to statute, Appellants had until September 9, 2014 to file either a claim of preservation or an affidavit declaring a savings event had occurred. See R.C. 5301.56(H)(1)(a), (b). Appellants admit that EOMR informed them on August 10, 2014 that they were required to file in the matter by sometime in September. While Appellants claim that they lacked sufficient information after the initial call from EOMR and needed time to research the nature of their claim, it is clear from this record that they had sufficient information on which to at least timely file a claim of preservation.

{¶25} Appellants obtained the March 3, 1944 deed on August 27, 2014, placing the Sharps on notice of the mineral interest reservation. The Millers filed the notice of abandonment on September 2, 2014. That same day, Appellants obtained an updated title report alerting the Sharps to the 2009 oil and gas lease between the Millers and EPC. Knowledge of this lease placed Appellants on notice that there was an adverse

interest in the minerals, particularly as they already knew that their grandfather reserved the interest in the property's minerals by way of the March 3, 1944 deed. Despite this knowledge, Appellant filed nothing to protect their interests. On September 9, 2014, the period to file a timely claim of preservation ended. Appellants waited until November 6, 2014 to attempt to file their claim for preservation. While it was on that date that they obtained an updated title search revealing the September 2, 2014 affidavit of abandonment, Appellants were aware as early as August that they had a potential interest in these minerals, and that quick action was necessary in order to preserve this potential interest. Appellants have provided no reasonable excuse as to why they waited until November of 2014 to file a claim of preservation. Importantly, EOMR informed the Sharps in early August that something would need to be filed in this matter by September at the latest. Appellants failed to take heed. This record shows that Appellants failed to file a timely claim of preservation to protect their interests.

{¶26} Appellants next argue that two oil and gas leases entered into by the Millers constitute savings events under the statute. Pursuant to R.C. 5301.56(B)(3):

Within the twenty years immediately preceding the date on which notice is served or published under division (E) of this section, one or more of the following has occurred:

(a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

(b) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral

interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, provided that the instrument or order creating or providing for the pooling or unitization of oil or gas interests has been filed or recorded in the office of the county recorder of the county in which the lands that are subject to the pooling or unitization are located.

(c)  The mineral interest has been used in underground gas storage operations by the holder.

(d)  A drilling or mining permit has been issued to the holder, provided that an affidavit that states the name of the permit holder, the permit number, the type of permit, and a legal description of the lands affected by the permit has been filed or recorded, in accordance with section 5301.252 of the Revised Code, in the office of the county recorder of the county in which the lands are located.

(e)  A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.

(f)  In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

Case No. 17 JE 0022

**{¶27}** A title transaction has been defined as "any transaction affecting title to any interest in land, which means that it is not limited to the transactions enumerated in the statute or to transactions that transfer an ownership interest." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 39. "In order for the mineral interest to be the 'subject of' the title transaction the grantor must be conveying that interest or retaining that interest." *Dodd v. Croskey,* 7th Dist. No. 12 HA 6, 2013-Ohio-4257, ¶ 48, affirmed on other grounds, *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147. A recorded oil and gas lease is a title transaction, and constitutes a savings event under R.C. 5301.56(B)(3)(a). *Id.* at ¶ 66. According to Appellants, a lease constitutes a savings event regardless of whether the lessor is the surface owner or the interest holder. This issue is one of first impression in Ohio.

**{¶28}** We are puzzled as to Appellants' claim that this lease would constitute a savings event for them, as they were never parties to this lease. Regardless, this particular lease cannot in any way be construed as a savings event. A person can only convey what he or she owns. *Short v. Short,* 4th Dist. No. 2014-Ohio-5864, ¶ 28. The record is clear that the Millers did not own any mineral interests at the time they entered into a lease with EPC, as they had not yet initiated the abandonment process. Because the Millers did not hold an interest in the minerals in either 2005 or 2009, they had no rights or property they were able to convey in a lease. As the mineral interests at issue were not properly conveyed or retained, they cannot validly be the "subject of" a title transaction. As such, neither the 2005 nor 2009 oil and gas lease rises to the level of a savings event under R.C. 5301.56(B)(3)(a).

**{¶29}** Accordingly, Appellants' second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The trial court erred by finding that Appellants' mineral interest was abandoned under common law principles. Judgment Entry, at 4, 5, 10-11.

**{¶30}** Appellants argue that the trial court erroneously ruled that I.W. Poole's mineral interests were abandoned due to Ruth Poole's failure to include these interests during her husband's estate administration. According to the trial court's findings of facts, I.W. Poole died in 1954, leaving his assets to his wife, Ruth Poole. In 1969, Ruth filed a release of administration listing a small parcel of property, but did not mention the mineral interests reserved in the March 3, 1944 deed. It does not appear that an estate was filed for Ruth Poole. The trial court ruled that Poole's interests were abandoned due to the failure to include them in the release of administration.

**{¶31}** In Ohio, as we have previously noted, any theory of common law abandonment has been supplanted by statute: "the Supreme Court has stated abandonment is now governed by the 2006 DMA. *Corban*, 149 Ohio St.3d 512 at ¶ 31, 33. None of the DMA cases in the appellate courts or the Supreme Court were remanded to ascertain if the mineral interest was abandoned outside of the DMA, and such a claim was not in the plaintiff's complaint." *Jefferis Real Estate Oil & Gas Holdings, L.L.C. v. Schaffner Law Offices, L.P.A.,* 7th Dist. No. 17 BE 0042, 2018-Ohio-3733, ¶ 22 ("*Jefferis II*"). Because the 2006 DMA is the sole governing authority when determining whether interests in minerals have been abandoned, any analysis under common law is moot.

<u>Case No. 17 JE 0022</u>

**{¶32}** Accordingly, Appellants' first assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR NO. 3

The trial court erred by failing to grant Appellants' motion for summary judgment. Judgment Entry, at 11.

**{¶33}** Appellants essentially repeat the arguments that appear in their first and second assignments of error. For the reasons provided within those assignments, Appellants' arguments are without merit and are overruled.

### Cross-Appeal

**{¶34}** EPC/Brocker raises four cross-assignments of error: (1) the trial court erroneously ruled that the oil and gas lease between the Millers and EPC is null pursuant to the 2006 DMA, (2) the trial court erroneously ruled that the lease is null pursuant to common law abandonment, (3) the trial court improperly failed to rule on EPC/Brocker's MTA defense, and (4) the trial court erroneously denied EPC/Brocker's counterclaim to quiet title. As EPC/Brocker does not provide any law or argument as to its fourth cross-assignment, it will not be addressed.

**{¶35}** Regarding its other three claims, EPC/Brocker generally argues that the trial court erroneously deemed its lease with the Millers a "nullity." As we have previously acknowledged, the purpose of the DMA is to "allow a surface owner to take steps to have mineral interests reunited with the surface lands." *Paul v. Hannon,* 7th Dist. No. 15 CA 0908, 2017-Ohio-1261, ¶ 28. In other words, the 2006 DMA addresses only whether mineral interests have been abandoned, allowing these interests to reunite with the surface property. While the trial court inartfully called the lease a "nullity," the

validity of the lease was never directly at issue in this case, as the DMA resolves only issues regarding the abandonment of mineral interests. To the extent that the parties interpret the trial court's dicta as affecting the validity of the lease, the court's statement reflects only its interpretation that the lease is irrelevant to any 2006 DMA analysis in this matter, and not that the lease is itself invalid.

{¶36} EPC/Brocker also argues that the trial court erroneously failed to consider its MTA defense. EPC/Brocker assert that they presented an affirmative defense based on the MTA, claiming that Appellants' interests were extinguished pursuant to the MTA. As interests extinguished by the MTA are automatically null and void, EPC/Brocker contended that the surface and mineral interests reunited in 1985, 24 years before the oil and gas lease was signed. Thus, the Millers did own the mineral interests at the time they entered the lease with EPC.

{¶37} EPC/Brocker raised the MTA as an affirmative defense, however, it was not raised for the first time until it was included in their motion for summary judgment. An affirmative defense must be raised in the pleadings or in an amendment to the pleading, or it is waived. *Henricksen v. Henricksen,* 7th Dist. No. 17 MA 0044, 2017-Ohio-9050, ¶ 19. The MTA is not mentioned in either EPC/Brocker's answer and counterclaim or in their amended answer and counterclaim. Consequently, any MTA issue was waived, here.

{¶38} Accordingly, EPC/Brocker's cross-assignments of error are without merit and are overruled.

### Conclusion

**{¶39}** Appellants argue that the trial court erroneously ruled their interest in the minerals at issue was abandoned pursuant to common law and the 2006 DMA. For the reasons provided, the trial court correctly determined that Appellants' interests were abandoned pursuant to the 2006 DMA. Because the 2006 DMA controls, Appellants' arguments regarding common law abandonment are moot. As to Appellees' cross-appeal, the trial court's dicta did not directly address nor affect the validity of the oil and gas lease between the Millers and EPC/Brocker in any way. The judgment of the trial court is affirmed.

Robb, P.J., concurs.

Bartlett, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are overruled and Appellees' cross-assignments are also overruled. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**