[Cite as *Moore v. SWN Prod. Co., L.L.C.*, 2024-Ohio-5517.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

GEORGE M. MOORE, JR. ET AL.,

Plaintiffs-Appellants,

v.

SWN PRODUCTION COMPANY, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MO 0006**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2022-306

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Craig J. Wilson,* C.J. Wilson Law, LLC, for Plaintiffs-Appellants George M. Moore, Jr. et al. and

*Atty. Craig E. Sweeney* and *Atty. Zachary D. Eddy*, Taft, Stettinius & Hollister, LLP, *Atty. Paul N. Garinger* and *Atty. Kristopher J. Armstrong*, Barnes & Thornburg, LLP, for Defendants-Appellees Eclipse Resources I and SWN Production Company, LLC and

*Atty. Matthew W. Onest*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, for Defendants-Appellees Emmaus Rassi, Gary John Zollinger and Teresa Rose Zollinger.

Dated:  November 21, 2024

**DICKEY, J.**

{¶1} Appellants, George M. Moore, Jr., Veronica J. Martin, Rowland Bowers, Joyce L. Edie, Robert R. Edie, Ronald A. Moore, Donna Moore, Theresa Lee Tobias, Michael B. Tobias, Sr., Jamie Markowitz, and Ivan Markowitz, appeal two judgments of the Monroe County Court of Common Pleas: (1) the January 3, 2024 judgment denying their motion to compel against Appellee, SWN Production Company, LLC ("SWN"); and (2) the April 9, 2024 judgment granting Appellees', SWN and Emmaus Zollinger Rassi, Gary John Zollinger, and Teresa Rose Zollinger (the "Zollingers") motions for summary judgment and denying Appellants' cross-motion for summary judgment.

{¶2} This is an oil and gas case pertaining to Ohio's Dormant Mineral Act ("DMA"). The trial court determined that under the DMA, the surface owners (the Zollingers) properly effectuated the abandonment of a dormant mineral interest (the "Moore Interest") encumbering title to the Property at issue. SWN produces oil and gas from the Property under a lease with the Zollingers.

{¶3} Appellants (the Moore Heirs) brought an action against Appellees claiming the Zollingers' 2010 abandonment of the Moore Interest was ineffective under the DMA and that Appellants retained an interest in the Property. Appellants also accused SWN of trespass, conversion, and unjust enrichment. The crux of Appellants' DMA claim is that the Zollingers did not exercise reasonable diligence to identify and locate the holders of the Moore Interest before filing an affidavit of abandonment.

{¶4} On the parties' cross-motions for summary judgment, the trial court held that the Zollingers had exercised reasonable diligence and complied with the DMA and that the Moore Interest was properly abandoned in 2010. Appellants now appeal the court's judgment and also seek review of an order in which the court denied their motion to compel SWN to produce privileged attorney title opinions.

{¶5} Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶6} This case involves approximately 40 acres of real property located in Lee Township, Monroe County, Ohio, Parcel No. 11-019002.0000 (the "Property"). The Property was conveyed to George and Theresa Moore by warranty deed recorded on

September 6, 1979, Volume 176, Page 481, of the Monroe County Deed Records. The Property was then conveyed from George and Theresa Moore to Gary and Teresa Zollinger in a deed recorded on May 4, 1982, Volume 182, Page 239 (the "Moore Deed"). The Moore Deed listed a current address for the Moores of 1551 Perryman Road, Aberdeen, Harford County, Maryland 21001.

{¶7}    The Moore Deed contained the following reservation of oil and gas rights:

> EXCEPTING AND RESERVING the ¾ of all royalty of oil and gas produced from these premises as reserved by former grantors and also reserving the ½ of all the coal underlying these premises as reserved by former grantors.

> FURTHER EXCEPTING AND RESERVING to the grantors, George M. Moore and Theresa Moore, husband and wife, all of the oil and gas, all of the coal, and all other minerals and mining and leasing rights not excepted or reserved by prior owners.

(Moore Interest) ("Severed Mineral Interest") (11/4/2022 Complaint, Exhibit 1).

{¶8}    There were two prior oil and gas royalty reservations in the Property's chain of title. The Moores' predecessors could not, and did not, reserve more than one-quarter of the oil and gas royalty. The Moore Interest laid dormant for decades. George Moore died testate on December 2, 2002 and his estate was administered in York County, Pennsylvania. Pursuant to George Moore's will, the Moore Interest was bequeathed to his surviving spouse, Theresa Moore. Theresa Moore died testate on November 29, 2014 and her estate was administered in Harford County, Maryland. Pursuant to Theresa Moore's will, the Moore Interest was bequeathed to her six children, Appellants George M. Moore, Jr., Veronica J. Martin, Theresa Lee Tobias, Joyce L. Edie, Ronald A. Moore, and Jamie Markowitz.

{¶9}    In July 2010, Gary and Teresa Zollinger entered into an oil and gas lease with Beck Energy Corporation ("Beck"). At Beck's request, Richard Yoss, then-counsel for the Zollingers, conducted a thorough title examination of the official records of Monroe County tracing the conveyances of the Property back more than 100 years. That title search uncovered three mineral reservations: (1) a 1905 reservation of one-half of the

Property's oil and gas royalties; (2) a 1923 reservation of three-fourths of all the royalty and gas produced from these premises – one-half of which was reserved by J.J. Hinderlong and Anna Hinderlong, previous grantors; and (3) the Severed Mineral Interest.

{¶10} On September 30, 2010, Attorney Yoss, on behalf of the Zollingers, sent letters via certified mail to George and Theresa Moore at the last known address in Aberdeen, Maryland that was listed in the Moore Deed notifying them of the Zollingers' intent to have the Moore Interest deemed abandoned. Additional notice was then provided via publication in the Monroe County Beacon on October 7, 2010.

{¶11} The Moores and their predecessors did not respond to the abandonment notices. On November 14, 2010, Gary and Teresa Zollinger executed an Affidavit of Abandonment for the Moore Interest, recorded by Attorney Yoss on November 17, 2010 in the Monroe County Public Records indicating the Moore Interest was abandoned pursuant to the DMA. On December 10, 2010, Attorney Yoss, on behalf of the Zollingers, caused a letter to be recorded in the official records of Monroe County requesting a marginal notation on the Moore Deed stating that the Moore Interest had been deemed abandoned, the final step in the abandonment. The abandonment covered the three reservations in the Property's chain of title.

{¶12} Five years later, in 2015, Attorney Yoss executed an Affidavit of Facts Related to Title which was subsequently recorded in the official records of Monroe County and which averred that a "due diligence" search was performed for holders of the Moore Interest with notice thereafter provided via publication. In March 2017, in reliance on the Monroe County public records and the sworn affidavit of Attorney Yoss, SWN filed at least two Declarations of Pooling and Unitization ("DPUs") in the Monroe County Public Records both of which specifically covered the Property. Those DPUs specifically included the lease governing the Moore Interest under which SWN, then as Eclipse Resources and now in its own name, was and is the current lessor (the "SWN Lease"). Eclipse pooled the Property into its David Stalder B Unit and David Stalder B-M Unit and drilled wells in those units. Eclipse began producing oil and gas from the Property in late 2017 and early 2018. SWN is Eclipse's successor-in-interest and is the current lessee under the Lease and operator of wells producing oil and gas from the Property.

{¶13} In October 2022, Appellant Veronica J. Martin executed a Notice, Affidavit, and Claim to Preserve and Affidavit of Heirship (the "Claim to Preserve") 12 years after the Zollingers took the steps to deem the Moore Interest abandoned.

{¶14} On November 4, 2022, Appellants filed a five-count complaint against Appellees: (1) quiet title as to the ownership of the Moore Interest; (2) declaratory judgment as to the ownership of the Moore Interest; (3) subsurface intentional trespass for unlawfully producing oil and gas from the Property; (4) conversion of revenues related to unlawful production of oil and gas from the Property; and (5) unjust enrichment of revenues related to unlawful production of oil and gas from the Property. Appellees filed answers. The trial court approved the parties' Civ.R. 26(F) plan to bifurcate the issues. Under the discovery plan, discovery and adjudication of the validity of the abandonment would occur first followed by, only if necessary, discovery and adjudication of the tort and damages claims.

{¶15} The parties filed cross-motions for summary judgment.

{¶16} On August 7, 2023, Appellants filed a motion for summary judgment as to ownership of the Moore Interest. Appellants argued: (1) they are the lawful heirs of the Moores; (2) the Moore Interest was not abandoned by the DMA because the Zollingers did not exercise reasonable diligence to search for the holders of the Moore Interest; and (3) the Moore Interest was not extinguished by the Marketable Title Act ("MTA").

{¶17} On August 8, 2023, the Zollingers filed a motion for summary judgment. The Zollingers argued: (1) they exercised reasonable diligence and the Moore Interest was abandoned; (2) they relied on Attorney Yoss and it is inequitable to find the DMA was not completed properly; and (3) Appellants failed to show that a search of Maryland records would have revealed information as to the identity or location of the holders of the Moore Interest.

{¶18} Also on August 8, 2023, SWN filed a motion for summary judgment. SWN argued: (1) the Moore Interest was abandoned by the DMA and the search was reasonable; (2) Appellants' quiet title action fails because they do not have possessory or reversionary interest in the Property; (3) Appellants' declaratory judgment claim fails because speedy relief is not necessary; (4) Appellants' trespass claim fails because they do not own the Moore Interest; (5) Appellants' conversion claim fails because it overlaps

with trespass and the funds are co-mingled with other monies; (6) SWN is an innocent trespasser; and (7) Appellants' unjust enrichment claim fails because there was no benefit conferred on SWN.

**{¶19}** Two days later, Appellants moved to strike portions of SWN's memorandum in support alleging that the arguments were premature or to continue Appellants' response date and permit additional discovery. The trial court determined SWN's summary judgment motion is proper and denied Appellants' motion to strike. However, the court allowed Appellants additional time to conduct discovery and file their response.

**{¶20}** Appellants served 55 new document requests despite SWN having produced nearly 1,000 pages of documents prior to the filing of the cross-motions for summary judgment. Request for Production No. 70 sought "all title opinions and any supplements related to the Property, Lease and the David Stalder Units." (Plaintiff's Exhibit 1). Request for Production No. 71 sought "all communications from counsel related to the Property, Lease and the David Stalder Units." (*Id.*)

**{¶21}** SWN objected to the requests on the basis of attorney-client privilege and noted that on a previously privileged log, it identified a title opinion prepared by counsel for SWN's predecessor, Eclipse. Because Request for Production No. 70 sought voluminous records that were privileged, SWN responded that no additional privilege log was required. Appellants filed a motion to compel responses to document Request Nos. 70 and 71 which was denied by the trial court on January 3, 2024. The court again found that the information sought by Appellants is privileged under the doctrine of attorney-client privilege.

**{¶22}** On April 9, 2024, the trial court granted Appellees' motions for summary judgment and denied Appellants' cross-motion for summary judgment. The court found the Zollingers exercised reasonable diligence in identifying and locating the holders of the Moore Interest, basing its decision on the following factors: (1) Attorney Yoss, the Zollingers' counsel, searched the Monroe County public records which yielded an address for George and Theresa Moore in Maryland; (2) Attorney Yoss sent notice to that address via certified mail; and (3) when that notice came back as undeliverable, Attorney Yoss published notice in a Monroe County newspaper. Thus, the court determined the Zollingers, through their representative, exercised reasonable diligence and properly

effectuated abandonment under the DMA. The court found the Zollingers are entitled to judgment as a matter of law in that they are the rightful owners of 100 percent of the oil and gas rights underlying the Property subject to an oil and gas lease held by SWN. Because it resolved the ownership issue in favor of the Zollingers, the court held that the tort and damages claims in Appellants' complaint were moot.

**{¶23}** Appellants filed a timely appeal and raise two assignments of error.

## SUMMARY JUDGMENT STANDARD OF REVIEW

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party

must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 2018-Ohio-5402, ¶ 10-12 (7th Dist.).

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SWN AND THE ZOLLINGERS, AND DENYING APPELLANTS' SUMMARY JUDGMENT, THAT THE "MOORE INTEREST" WAS ABANDONED UNDER THE DORMANT MINERAL ACT UNDER R.C. 5301.56.**

**{¶24}** In their first assignment of error, Appellants argue the trial court erred in granting Appellees' motions for summary judgment and denying their cross-motion for summary judgment. Appellants assert the court erred in finding the Moore Interest was abandoned under the DMA. Appellants do not believe the Zollingers complied with the requirements of R.C. 5301.56(E) when their counsel, Attorney Yoss, did not also search out-of-state Maryland records for the mineral interest owners. Appellants believe that when in-county records indicate an out-of-county address, reasonable diligence requires the surface owner to search out-of-county records for an updated address. Although Appellants admit the trial court did not address whether the Moore Interest was extinguished under the MTA, they nevertheless ask this court to decide that issue.

**{¶25}** The record supports the trial court's finding that the Zollingers complied with the DMA, used reasonable diligence in their search for the holders, and properly effectuated the abandonment of the Moore Interest. To effectuate the abandonment of a

dormant mineral interest, the DMA requires surface owners to provide notice of the intent to abandon to the holders of the dormant mineral interest or their successors or assigns and once that is accomplished, record an affidavit of abandonment in the county where the land is located. Specifically, R.C. 5301.56 states in part:

> (E) Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:

> (1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

> (2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

R.C. 5301.56(E)(1) and (2).

**{¶26}** Appellants claim the Zollingers failed to comply with R.C. 5301.56(E), and assert that under *Gerrity v. Chervenak*, 2020-Ohio-6705, and *Fonzi v. Brown*, 2022-Ohio-901, the Zollingers failed to use reasonable diligence in their search for the holders of the mineral interest at issue.

**{¶27}** Under Ohio law, when attempting to effectuate the abandonment of a severed oil and gas interest, it is undisputed that courts must decide on a case by case

basis based on the "facts and circumstances of each individual case" whether a party seeking abandonment of a mineral interest used reasonable due diligence in locating the holders of such an interest. *Sharp v. Miller*, 2018-Ohio-4740, ¶ 17 (7th Dist.). Reasonable due diligence is not susceptible to a bright-line rule or test. *Id.*

**{¶28}** In *Gerrity*, the Supreme Court of Ohio confirmed that an internet search is not required before publication of a notice of abandonment under R.C. 5301.56. *Gerrity* at ¶ 31, 34. Rather, the surface owner must consult the public property records in the county in which the surface property is located, including the chain of title and probate records. *Id.* at ¶ 35. "Review of publicly available property and court records in the county where the land subject to a severed mineral interest is located will generally establish a baseline of reasonable diligence in identifying the holder or holders of the severed mineral interest." *Id.* at ¶ 36. "There may, however, be circumstances in which the surface owner's independent knowledge or information revealed by the surface owner's review of the property and court records would require the surface owner, in the exercise of reasonable diligence, to continue looking elsewhere to identify or locate a holder." *Id.*

**{¶29}** The DMA does not implicate the jurisdictional concerns underlying Civ.R. 4.4 and R.C. 2703.24. *Id.* at ¶ 27. The General Assembly did not intend service by certified mail under R.C. 5301.56(E)(1) to be mandatory. *Id.* at ¶ 23. Rather, by the statute's plain language, anytime service of notice by certified mail cannot be completed, R.C. 5301.56 permits service of notice by publication. *Id.* at ¶ 23-24.

**{¶30}** In *Fonzi*, the Supreme Court of Ohio refined the due diligence test, specifically on the independent knowledge element. A surface owner cannot ignore its actual knowledge that the holders of the mineral interest resided in a different county or state on the date they created the severed mineral interest. *Fonzi, supra,* at ¶ 26. The Court re-affirmed that the search first focuses on the public records of the county where the minerals are located. *Id.* at ¶ 28. The surface owner must go beyond those county records only when its search uncovered "knowledge that the mineral-interest holder did not reside within that county when the reservation was made[.]" *Id.*

**{¶31}** The Zollingers established reasonable diligence under *Gerrity* and *Fonzi.* The Zollingers' attorney, Attorney Yoss, did what Appellants alleged he should have done. The Zollingers relied on Attorney Yoss, at Beck's suggestion, to handle the due diligence

and legal work. Attorney Yoss searched the property and court records in the county where the subject land is located. Certified mail was attempted and publication occurred under R.C. 5301.56(E)(1). Appellants' references that Attorney Yoss did not use internet sources are irrelevant as a surface owner need not use sources outside the public records of the pertinent county. *See Gerrity*, 2020-Ohio-6705, at ¶ 31, 34.

**{¶32}** There is no dispute that Attorney Yoss sent notice via certified mail to the record holders' Aberdeen, Harford County, Maryland address identified within the severance deed, i.e., the last known address. Appellants did not submit evidence with their summary judgment filings showing that the Aberdeen, Maryland address was not a good address. Appellants also fail to show that a search of Harford County, Maryland would have located a better address for the original holders or their heirs. Attorney Yoss also published the notice in the Monroe County Beacon. The publication covered all three severed mineral interests affecting the Property.

**{¶33}** Attorney Yoss did not do what the surface owners in *Fonzi* did: ignore an address within the severance deed and proceed straight to publication. The Supreme Court of Ohio in *Fonzi* emphasized that fact: ("Unlike the surface owner in *Gerrity*, here, the surface owners disregarded information about the last known residence of the mineral-rights holder and made no attempt to make any personal service. Instead, the surface owners proceeded straight to notice by publication.") *Fonzi*, 2022-Ohio-901, ¶ 26. Attorney Yoss did not avoid attempts at personal service. Attorney Yoss did not ignore information about the record holders living or receiving mail in a different county or state like the surface owners did in *Fonzi*, *Toma v. Devaul*, 2023-Ohio-2163 (5th Dist.), and *Tatum v. Dawson*, 2023-Ohio-1746 (7th Dist.). Instead, Attorney Yoss attempted certified mail service at the last known address pursuant to the DMA. *See Fonzi* at ¶ 28. Attorney Yoss also notified the holders through publication pursuant to the DMA. *See* R.C. 5301.56(E)(1).

**{¶34}** Appellants cite to *Fonzi*, *Toma*, and *Tatum* in support of their argument that when in-county records reveal an out-of-county address, the surface owners must search the public records of the foreign county in order to meet the reasonable diligence standard. In those cases, the surface owner had not exercised reasonable diligence to identify and locate the holder of the dormant mineral interest. However, in those cases,

the in-county records had failed to yield a last-known address for the holder, who was known to live out of the county, making additional diligence a reasonable requirement.

{¶35} In this case, the record lacks evidence that a search of Harford County, Maryland would have informed Attorney Yoss that George Moore died in 2002; that George Moore had an estate in Pennsylvania in 2002; that Theresa Moore was the sole record holder in 2010; and that Theresa Moore had a better address than the one listed in the severance deed. Theresa Moore's death and her estate in Maryland did not occur until 2014, about four years after Attorney Yoss conducted the instant search, thereby making her estate irrelevant. Appellants fail to identify any information available in Harford County, Maryland in September 2010 which would have given Attorney Yoss a better address for the Moores. *See Fonzi* at ¶ 22 ("Requiring that a surface owner exercise reasonable diligence is not tantamount to requiring the owner to engage in futile or vain acts. Surface owners are not required to do the impossible and locate undiscoverable holders[.]")

{¶36} Based on the facts and circumstances in this case, the Zollingers successfully abandoned the severed mineral interest under R.C. 5301.56(E). The record reveals the Zollingers exercised reasonable due diligence in their abandonment procedure under the DMA: they relied on Attorney Yoss; Attorney Yoss handled all aspects of the abandonment; Attorney Yoss notified the record holders of the severed mineral interest by sending certified mail to their last known address in Aberdeen, Maryland, identified within the Monroe County records, return receipt requested; the certified mail was returned as undeliverable; and Attorney Yoss published notice of the intent to abandon in the Monroe County Beacon.

{¶37} The trial court did not err in upholding the abandonment of the dormant Moore Interest as the facts in this case are materially consistent with the facts in *Gerrity*. In *Gerrity*, the Supreme Court of Ohio held that the surface owner exercised reasonable diligence and, therefore, properly effectuated abandonment of the dormant mineral interest when they mailed notice to an out-of-county address for the rights holders found in the records of the county in which the property was located and published notice in that county when the certified mail was returned as undeliverable. The court did not err in holding that the Zollingers are entitled to judgment as a matter of law as they are the

Case No. 24 MO 0006

rightful owners of 100 percent of the oil and gas rights underlying the Property subject to an oil and gas lease held by SWN.

**{¶38}** In addition to their arguments regarding the DMA, Appellants included in their motion for summary judgment an argument that the Moore Interest was not extinguished under the MTA. The MTA can extinguish interests created prior to the "root of title" under certain circumstances. *See* R.C. 5301.50. As Appellants admit in their brief, "The Trial Court did not address Appellants' MTA claim because it found the DMA dispositive." (7/2/2024 Appellants' Brief, p. 18). Nevertheless, Appellants ask this court to "declare the MTA did not extinguished [sic] the Moore Interest." (*Id.*) This court, however, may not address a ground asserted in support of summary judgment when the trial court did not consider it in the first instance.

**{¶39}** "The trial court must at least consider the issue in the first instance before an appellate court considers alternative arguments." *Breazeale v. Infrastructure & Dev. Eng'g, Inc.*, 2022-Ohio-4601, ¶ 15 (1st Dist.), citing *Yoskey v. Eric Petroleum Corp.*, 2014-Ohio-3790, ¶ 41 (7th Dist.) ("'[If] a party raises ten arguments in a summary judgment motion, the trial court adopts the first one, and the appellant assigns that position as error, the appellee cannot require this court to address the nine other arguments by arguing that the judgment can be affirmed on other grounds that the trial court never reached.'")

**{¶40}** We decline to reach the issue of whether the Moore Interest was not extinguished under the MTA because that issue was never considered by the trial court, perhaps because it was not addressed in Appellees' motion for summary judgment and there is no indication the parties agreed there were no outstanding issues of material fact with regard to the MTA.

**{¶41}** Appellants' first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT [ERRED] IN DENYING APPELLANTS' MOTION TO COMPEL SWN'S TITLE OPINIONS AND COUNSEL COMMUNICATIONS.**

**{¶42}** In their second assignment of error, Appellants contend the trial court erred in denying their motion to compel SWN's title opinions and counsel communications.

Appellants claim SWN waived its purported attorney-client privilege as to title opinions and advice of counsel when it put those at issue in asserting it is an innocent trespasser and it did not produce a privilege log.

**{¶43}** An appellate court must affirm a trial court's ruling on a motion to compel absent an abuse of discretion. *Fisher v. Fisher*, 2018-Ohio-2477, ¶ 46 (7th Dist.). An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶44}** "The main purpose behind the attorney-client privilege is to promote '"full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."'" *Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 16, quoting *Boone v. Vanliner Ins. Co.,* 91 Ohio St.3d 209, 210 (2001), fn. 2, quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "The attorney-client privilege is one of the oldest privileges recognized in the common law." *Burnham* at ¶ 17, citing *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998). "The privilege belongs to the client, and unless a waiver or other exception causes the privilege to not apply, it offers full protection from discovery." *Burnham* at ¶ 17, citing R.C. 2317.02(A); Civ.R. 26(B)(1).

**{¶45}** Advice of counsel is an affirmative defense that can waive the attorney-client privilege with regard to any such advice. *State ex rel. Hicks v. Fraley*, 2021-Ohio-2724, ¶ 14. However, it "presumes that the person asserting the defense engaged in actionable conduct 'on the advice of counsel.'" *Id.*, quoting *Mancz v. McHenry*, 2021-Ohio-82, ¶ 33 (2d Dist.).

**{¶46}** As stated, Appellants served 55 new document requests despite SWN having produced nearly 1,000 pages of documents prior to the filing of the cross-motions for summary judgment. Request for Production No. 70 sought "all title opinions and any supplements related to the Property, Lease and the David Stalder Units." (Plaintiff's Exhibit 1). Request for Production No. 71 sought "all communications from counsel related to the Property, Lease and the David Stalder Units." (*Id.*)

**{¶47}** SWN objected to the requests on the basis of attorney-client privilege and noted that on a previously privileged log, it identified a title opinion prepared by counsel

for SWN's predecessor, Eclipse. Because Request for Production No. 70 sought voluminous records that were privileged, SWN responded that no additional privilege log was required. Appellants filed a motion to compel responses to document Request Nos. 70 and 71 which was denied by the trial court on January 3, 2024. Specifically, the trial court stated: "Consistent with previous similar findings from this Court, this Court again finds that the information sought by [Appellants] in Document Requests 70 and 71 is privileged material under the Doctrine of the Attorney-Client Privilege." (1/3/2024 Judgment Entry).

**{¶48}** Appellants acknowledge the title opinion they seek is privileged, yet they claim SWN waived the privilege by "re[lying] on title opinions and advice of counsel to prove innocent trespass[.]" (7/2/2024 Appellants' Brief, p. 19). However, SWN did not rely on title opinions to prove innocent trespass. SWN has not engaged in actionable conduct on the advice of its counsel nor has it voluntarily disclosed any advice it received. SWN has not produced the title opinion on the basis of privilege.

**{¶49}** In its motion for summary judgment, SWN argued it acted in reliance on the public records of Monroe County as they existed at the time of the trespass. In doing so, SWN (or its predecessor) could not possibly have engaged in a bad faith trespass. The only reference to the title opinion in SWN's motion for summary judgment was that "SWN's predecessor took the additional step of hiring counsel to complete a title opinion related to the ownership of the Property prior to drilling any oil or gas wells." (8/8/2023 SWN's Motion for Summary Judgment, p. 26).

**{¶50}** Attached to SWN's motion for summary judgment is an affidavit of Gary Nuckolls, Senior Staff Landman. Nuckolls stated his affidavit was based on his personal knowledge and his review of SWN's business records. As to SWN's business records "generally created in the ordinary course of business," Nuckolls averred "SWN regularly relies upon those records in conducting its business." (Exhibit 3). These statements address the admissibility of such documents as evidence, i.e., as business records that are an exception to the hearsay rule under Evid.R. 803(6). SWN's motion for summary judgment and Nuckolls' affidavit reference the existence of a title opinion, not its content or that SWN relied on the withheld title opinion.

**{¶51}** The argument in SWN's motion for summary judgment regarding counts three and four (trespass and conversion) in which it mentioned the title opinion, was not decided by the trial court as it was rendered moot. The trial court concluded:

> Based on the foregoing, this Court finds that the abandonment in this case shall be upheld and judgment is granted in favor of the Zollinger Defendants and SWN as a matter of law on Counts I and II contained in Plaintiffs' Complaint. Because the Zollinger Defendants and SWN are entitled to judgment as a matter of law as to ownership of the subject mineral interest, the remaining causes of action contained in Plaintiffs' Complaint are thereby rendered moot.

(4/9/2024 Judgment Entry, p. 12).

**{¶52}** Appellants fail to establish the trial court abused its discretion in denying their motion to compel SWN to produce privileged title opinions.

**{¶53}** Appellants' second assignment of error is without merit.

## CONCLUSION

**{¶54}** For the foregoing reasons, Appellants' assignments of error are not well-taken. The January 3, 2024 judgment of the Monroe County Court of Common Pleas denying Appellants' motion to compel against SWN and the April 9, 2024 judgment granting Appellees' motions for summary judgment and denying Appellants' cross-motion for summary judgment are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 24 MO 0006

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Monroe County, Ohio, are affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**